**ELRICK RIM COMPANY, a co-partnership, consisting of M. C. Elrick and M. B. Champlin, Plaintiff,**

v.

**READING TIRE MACHINERY CO., Inc., a corporation, and Ralph R. Reading, an individual, Defendants.**

No. 19538.

United States District Court
S. D. California,
Central Division.

Dec. 5, 1957.

**61**

Hill, Farrer & Burrill, Los Angeles, Cal., and Mellin, Hanscom & Hursh, by Jack E. Hursh, San Francisco, Cal., for plaintiff.

Herzig & Jessup, by Albert M. Herzig and Thelma S. Herzig, Los Angeles, Cal., for defendants.

YANKWICH, Chief Judge.

The above-entitled cause heretofore tried, argued and submitted is now decided as follows:

On the issues raised by the plaintiff's complaint and the defendant's answer and counter-claim, judgment will be entered as follows:

1. That plaintiff take nothing against the defendants or either of them on either the claim alleging invalidity of the patent in suit or the claim for unfair competition.

2. Judgment will be for the defendant as prayed for in the answer and counter-claim, finding the claims of the patent in suit and each of them valid and infringed by the plaintiff.

Injunction will be issued against the plaintiff to prevent further infringement

and the matter will, after the interlocutory decree has become final, be referred to a Master to be appointed by the Court to ascertain the amount of single damages to be awarded the defendant under Section 284 of Title 35 U.S.C.A. Defendant to recover costs of suit.

■ As the plaintiff forced the litigation upon the defendant and sought not only declaration of invalidity and damages for unfair competition, but attorneys fees also, under circumstances which the Court thinks were not justified, in view of the recency of the issuance of the defendant's patent, the Court is of the view that in this case the defendant should recover attorneys fees against the plaintiff. The amount will be determined upon a showing to be made before this Court on notice to be given by the defendants.

Findings and Judgment to be prepared by counsel for the defendants under Local Rule 7, West's Ann.Code.

### Comment

By its complaint the plaintiff seeks to have declared invalid Letters Patent 272,148 issued to Ralph R. Reading, one of the defendants, on October 18, 1955, upon the ground that the processes described in the claims are anticipated in the prior art (35 U.S.C.A. § 102(a)), that the claims are invalid for indefiniteness (35 U.S.C.A. § 112) and that the record shows prior use by Reading and others for more than one year before the filing of the application for patent (35 U.S.C.A. § 102(b)).

A second cause of action seeks damages for unfair competition based upon notice to some of the plaintiff's customers and to the trade in December, 1955 and general notice to the trade in January, 1956, through an advertisement in a trade paper that asserted the issuance of the patents and their intention to prosecute persons who used the process. The answer denies invalidity and by counterclaim asks that the Letters Patent 272,148 be declared valid and infringed with damages for patent infringement which it is sought to treble.

The Congress in revising the Judicial Code in 1948, provided specifically that the federal district court should have original jurisdiction over any civil action asserting a claim of unfair competition when joined with a substantial and related claim under "the patent law". 28 U.S.C.A. § 1338(b).

■ The writer has had occasion recently to indicate the benefits derived from the use of unfair competition in conjunction with patent, trademark and copyright litigation. See Yankwich, Unfair Competition as an Aid to Equity in Patent, Copyright and Trademark Cases, 1957, 32 Notre Dame Lawyer, p. 438 et seq. And it may be conceded that if a person having a patent harasses another's customers, the Court could, especially if the patent is declared invalid or no infringement is found, hold that such harassment might constitute unfair competition. But in the case before us it is quite evident that the notices and advertisements were sent out *a short time* after the patent was issued to Reading and were very conservative in tone. And it would be stretching the norm of unfair competition beyond its reasonable and equitable import to charge with unfair competition a person who, after long proceedings in the Patent Office, has secured a valid patent to a process, *merely notifies* the trade of the fact and that he intends to protect his rights under it. And our Court of Appeals has so held. Celite Corporation v. Dicalite Co., 9 Cir., 1938, 96 F.2d 242, 250.

As the period of limitation for an action for patent infringement is six years (35 U.S.C.A. § 286), an infringer should not be permitted to force the patentee to "rush" court action before he is ready under penalty of making his failure to institute such action an act of unfair competition. So there is no substance to the plaintiff's claim of unfair competition in this case. Reading believed he had a valid new process. And he was within his rights and acted in good faith in notifying the trade that he intended to assert his rights under the patent.

More, we are of the view that the patent is valid.[1] The experts of the plaintiff have sought to dissect the patent into segments and to show that it presents nothing new. At times, as I stated at the trial, they have confounded process with product and device and vice versa. In the last analysis, the patent is a process patent of the type which has been recognized as valid for many years going back to the famous case of Ansonia Brass & Copper Co. v. Electrical Supply Co., 1892, 144 U.S. 11, at page 18, 12 S.Ct. 601, at page 604, 36 L.Ed. 327, where the Court states the principle in this manner:

"On the other hand, if an old device or *process be put to a new use,* which is not analogous to the old one, and the adaptation of such process to the new use is of such a character as to require the exercise of inventive skill to produce it, such new use will not be denied the merit of patentability." (Emphasis added.)

Later cases have reasserted the principle and have applied it even to device patents

---

1. The Patent is entitled "Spray Device For Retreading Tires and the Like Uses". Originally it was sought to have a patent on both the spraying apparatus and the method of applying it. Later the application was divided and the present patent limited to claims as to the method of spraying the rubber. The Claims, four in number, read:

"1. A method of applying rubber cement which includes an inflammable solvent, comprising forming an emulsion of air in the cement in a dispersion zone by introducing said air under pressure into a substantial body of cement maintained in said zone at superatmospheric pressure continuously withdrawing a stream of the emulsion from the dispersion zone, forming an independent stream of air, continuously mixing the emulsion stream with said independent stream of air in a mixing zone, and continuously directing the resulting mixture of emulsion and air into a surface to form a thin uniform coating of rubber cement thereon.

"2. A method of applying rubber cement which includes an inflammable solvent, comprising introducing a measured amount of the cement into a dispersion zone, introducing a quantity of air at superatmospheric pressure into the cement under emulsion conditions to form a stable dispersion of gas and cement under pressure, continuously withdrawing a stream of the emulsion from the dispersion zone, continuously withdrawing a separate stream of air from a source of air under superatmospheric pressure, continuously mixing the streams of emulsion and said separate stream of air in a mixing zone to form a spray of emulsion suspended in air, and continuously directing the resulting spray onto a surface to form a thin uniform coating of rubber cement thereon.

"3. A method of applying rubber cement comprising introducing a measured amount of liquid rubber cement composition comprising an elastomer and an inflammable solvent into an enclosed dispersion zone, introducing a quantity of air into the cement under conditions to form an emulsion of air in the liquid cement at a pressure in the range of about 5 pounds to about 200 pounds per square inch, continuously withdrawing a stream of the emulsion from the dispersion zone, continuously withdrawing a separate stream of air from a source of air under superatmospheric pressure, continuously mixing the streams of emulsion and air in a mixing zone to form a spray of emulsion suspended in gas, and continuously directing the resulting spray onto a surface to form a thin uniform coating of rubber cement thereon.

"4. A method of applying rubber cement to a surface comprising introducing about 2.5 volumes of liquid rubber cement composition comprising rubber and an inflammable solvent into an enclosed dispersion zone of about 3.0 volumes capacity, introducing a quantity of air into the liquid cement under conditions to form an emulsion of air in the cement at a pressure in the range of about 5 pounds to about 200 pounds per square inch, continuously withdrawing a stream of the emulsion from the dispersion zone, continuously withdrawing a stream of air from a source of air under superatmospheric pressure, continuously mixing the streams of emulsion and air in a mixing zone to form a spray of emulsion suspended in air containing of the order of a fraction of an ounce of cement to several cubic feet of air, and continuously directing the resulting spray onto a surface to form a thin uniform coating of rubber cement thereon."

where a change of material resulted in better use. Potts v. Creager, 1895, 155 U.S. 597, 609, 15 S.Ct. 194, 39 L.Ed. 275. Even more recently the basic principle declared in Ansonia Brass & Copper Co. v. Electrical Supply Co., supra, was given recognition. See General Electric Co. v. Jewel Incandescent Lamp Co., 1945, 326 U.S. 242, 247–248, 66 S.Ct. 81, 90 L.Ed. 43. In the matter of chemical patents, even the introduction of a known compound into a different combination has been held to amount to invention over the prior art. Gilbert Spruance Co. v. Ellis-Foster Co., 3 Cir., 1940, 114 F.2d 771. And see the writer's recent opinion in Everlube Corp. of America v. Electrofilm, Inc., D.C.Cal.1957, 154 F.Supp. 788.

The new codification of the patent law adopted these principles by including among patentable inventions not only a new and useful process or composition of matter but also any "new and useful improvement thereof". 35 U.S.C.A. § 101.

"The test of the indentity of processes is not the apparatus used for carrying them out but whether they involve identical or equivalent steps. See Philadelphia Rubber Works Co. v. Portage Rubber Co., 6 Cir., 241 F. 108". Celite Corporation v. Dicalite Co., supra, 96 F.2d at page 248.

In the light of these principles, the problem before us is not difficult of solution. A study of the prior art including the art which was not considered in the patent office, convinces me that not one of them anticipated this process. The two best are Gradolph 1,318,863 and Cahill 2,758,037. Gradolph is a device called "pressure regulator", the object of which is to regulate the pressure in a paint receptacle with a view of guiding the pressure of the paint. Cahill is described as "an apparatus and method of applying an adhesive coating to rubber tires". It retains the brushing method (manual application) which Reading first taught the art to abandon in order to achieve a better result. If it be conceded that the spray gun was well known in the art of applying paint, there is in this patent more than the transfer of a method from one field to another, or description of a process. There is a new process whereby in using a spray gun to apply a rubber cement in a certain mixture, a safer, faster and cheaper method of preparing tires for retreading is fully and comprehensibly described. It revolutionized the prior art which applied the rubber manually. Persons skilled in the art who have testified in the case for both sides have found no difficulty in understanding the method described in the patent. That it has been successful in producing results which were not anticipated, reduces hazard by a combination of air with rubber solvent and cement so as to turn an inflammable substance into a non-flammable substance is quite evident. Whether the mixture achieved is technically called an "emulsion" or not is unimportant. A patentee is entitled to the full benefit of the claims by which he expresses his invention. And even assuming that the mixture described in the claims cannot be called chemically an emulsion no uncertainty results, for the patents described clearly what is meant by "emulsion" and the results it achieves. So the claims are valid. 35 U.S.C.A. § 112.

The invention was not anticipated in the prior art and is not invalid for prior use. 35 U.S.C.A. § 102(b). Admittedly a process patent which merely describes the function of a machine is not patentable. Walker on Patents, Deller's Ed., 1937, § 20; Kruger v. Whitehead, 9 Cir., 1946, 153 F.2d 238. However, if the process patent adds one element not known in the prior art, it is patentable. General Tire & Rubber Co. v. Fisk Rubber Corp., 6 Cir., 1939, 104 F.2d 740, 745. Even if the patent in suit be considered from one angle only and that is that it taught the substitution of a machine operation for a manual operation, it would still constitute invention over the prior art. See writer's opinion in Mantz v. Kersting, D.C.Cal.1939, 29 F.Supp. 706, 710–711; Oliver United Filters v. Eimco Corp., 10 Cir., 1937, 91 F.2d 345. The plaintiff's process clearly

infringes. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 609–611, 70 S.Ct. 854, 94 L.Ed. 1097.

Hence the ruling above made.