## CHESAPEAKE & O. RY. CO. v. KALTEN-BACH et al.

### No. 4871.

Circuit Court of Appeals, Fourth Circuit.

Argued Nov. 24, 1941.

Decided Dec. 26, 1941.

---

276

Albert R. Teare, of Cleveland, Ohio (Bates, Teare & McBean, of Cleveland, Ohio, and Kearney & Kearney, of Phoebus, Va., on the brief), for appellees and cross-appellants.

John J. Mahoney, of Columbus, Ohio, and Leigh D. Williams, of Norfolk, Va., for appellant and cross-appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case has been before our Court once before on an appeal from an interlocutory decree of the District Court holding that the patents in suit were valid, that these patents had been infringed by the defendant, that there was also a breach of trust and that "the Kaltenbach ideas were wrongfully appropriated and embodied in the Newport News dumper". See Chesapeake & Ohio Railway Co. v. Kaltenbach, 4 Cir., 95 F.2d 801, 806. The present appeal is from a final decree of the District Court, after a reference to a Master and an accounting, assessing the damages. The defendant appealed, attacking the assessment at almost every point and alleging that the damages were much too high; while there was a cross-appeal by the plaintiffs, with a contention that the damages in almost every respect were far too low.

The record in the case is very voluminous and we shall, in this opinion, content ourselves with a brief review of the more important points at issue.

Royalties as the Basis of Damages.

We think there is ample evidence to justify the finding below that the coal pier of the defendant, on which the infringing machine was used, was operated at a loss. This, of course, prevents the use of profits as a measure of damages. Plaintiffs have not granted any licenses under the patent so we cannot use, as a method of assessing damages, the royalties paid by licensees. Nor is it practical to fix the damages by the extent to which the infringement prevented the plaintiffs from deriving profits through sales lost as a result of infringement. Accordingly, we approve the royalty basis urged by the court below as a fair method for assessing the damages. See Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 648, 35 S.Ct. 221, 59 L.Ed. 398.

The decree below bases this royalty at ½c per ton on all "easy coal" handled at pier 15 during the infringing period. The term "easy coal" is a designation for coal as to which the operator is directed to exercise care in handling such coal, since its value would be greatly impaired by any breakage. Plaintiffs insist that the rate of ½c per ton is too low and that any royalty, whatever the rate, should have been applied to all coal handled at the pier and not merely to "easy coal". The evidence seems to show that the percentage of "easy coal" handled during the infringing period was approximately 29.4% of all the coal handled at the pier. Defendant contends that the royalty basis should not have been used but rather a percentage of the value of the equipment; and defendant further contends that the rate of ½c per ton applicable only to "easy coal" is too high. In the light of the evidence, which was in some respects conflicting, we believe that the rate of ½c per ton, and the limitation of the royalty to "easy coal", for the handling of which the plaintiffs' device was especially well adapted, are fair and reasonable under the circumstances.

Time During Which Royalties Should Be Computed.

By virtue of the breach of trust involved in this case, and the circumstances under which the defendant appropriated the

ideas of the plaintiffs, we agree with the court below that the period for which these royalties are computed should begin at the time the defendant appropriated the ideas of the plaintiffs and began to use equipment embodying these ideas. This seems fairer than the contention of the defendant that royalties should be charged only from the subsequent date of the issuance of the patents.

■ Though it was seriously disputed by the plaintiffs, we think the record amply supports the lower court's finding that the infringement ceased as of July 6, 1937, and that this date should constitute the end, of the period during which the royalties should be computed.

### Litigation Expenses.

■ We are not disposed to disturb the discretion of the court below in refusing to allow, under the facts of this case, litigation expenses to the plaintiffs. See Sutton v. Gulf Smokeless Coal Co., 77 F.2d 439, 442, decided by this Court.

### Increasing the Damages by 125%.

■ The Master recommended that the actual damages, as found by him, be trebled, which is the maximum permitted in cases similar to this. The District Court decided that it would be fair, instead of trebling the damages, to increase the damages by 125%. This, again, is a field for the peculiar play of discretion on the part of the trial judge, and we find nothing in the record to indicate that the judge here has in any way abused this discretion.

### Interest on the Award.

The Master fixed the rate of interest at 5% on the amount awarded as damages but this rate was increased by the court to 6%, which is the legal rate in Virginia.

The plaintiffs submitted a bid on the building of the dumper, accompanied by blueprints embracing the unique features of the inventions of the plaintiffs, and the defendant, while it rejected this bid, nevertheless appropriated these ideas of the plaintiffs. Accordingly, the defendant did what would have been lawful only under a license from the plaintiffs, and there was no such license. Under the ordinary contract of license in patent cases, when there is a stipulated royalty, at a fixed rate per unit, these royalties are paid at fixed periods, not exceeding one year in length, after each period.

■ In Tilghman v. Proctor, 125 U.S. 136, 160, 161, 8 S.Ct. 894, 907, 31 L.Ed. 664, the Supreme Court said: "* * * the profits allowed in equity, for the injury that a patentee has sustained by the infringement of his patent, have been considered as a measure of unliquidated damages, which as a general rule, *and in the absence of special circumstances,* do not bear interest until after their amount has been judicially ascertained. * * * *Nothing is shown to take this case out of the general rule."* (Italics ours.)

We think, however, that there are special circumstances, as we have just indicated, which take the instant case out of the general rule, and there are many adjudicated cases in which interest has been allowed before the liquidation of damages, as of the time when the royalties should have been paid. See Munsing Paper Co. v. American Sulphite Pulp Co., 6 Cir., 228 F. 700, 708; B. F. Goodrich Co. v. Consolidated Rubber Tire Co., 7 Cir., 251 F. 617, 624; Parker Rust Proof Co. v. Ford Motor Co., D.C., 23 F.2d 502, 504, 505.

■ The decree of the District Court should accordingly be modified by fixing the royalties accruing to the end of each year during the infringing period at the prescribed rate of ½c per ton on all "easy coal" handled at the pier, and allowing interest on the amount so fixed from the end of each calendar year at the rate of 6%. The amount of interest thus arrived at should be added to the amount fixed by the decree of the District Court. The amount of interest so added, however, is not to be increased by 125%.

In all other respects, we affirm the decree of the District Court.

Modified and Affirmed.