World Wide Pharmacal Distributing Co., Appellee, v. Manny N. Kolkey, Penn Pharmaceutical Distributing Co. et al., Appellant.

### Gen. No. 46,574.

First District, Third Division.
February 23, 1955.
Released for publication April 6, 1955.

Lyle, Havey & Gager, of Chicago, for appellant.

Kaplan & Sparberg, of Chicago, for appellee.

MR. JUSTICE LEWE delivered the opinion of the court.

Defendant Manny Kolkey appeals from an order directing the issuance of a temporary injunction restraining him from engaging in the manufacture and sale of a pharmaceutical pill containing an ingredient known as "Galega" alleged to enlarge the female breast and from advertising any pharmaceutical pill under the name of "Charm-on" or any other name in newspapers or other publications or through the use of any mailing lists of any other person or company.

The essential allegations of the complaint are as follows: Since March 30, 1954, plaintiff, an Illinois corporation, with its principal place of business in the City of Chicago, has engaged in the manufacture and mail-order distribution of a pharmaceutical product called "Kurvon." About April 1, 1954, plaintiff sent defendant Kolkey to France as its representative to negotiate contracts with French pharmaceutical "houses" for the purchase of "Galega." All of defendant Kolkey's travel expenses to France, including his salary aggregating $2,500, were paid by plaintiff. Upon the return of defendant Kolkey to the United States plaintiff launched an extensive advertising campaign to promote the mail-order distribution of "Kurvon" and has expended, and is still expending, large sums of money for advertising throughout the United States for the specific purpose of making its product known to the general public. The active ingredient contained in "Kurvon," known as "Galega" has not been used in the United States as a bust developer prior to plaintiff's manufacture and distribution thereof. In the conduct of its mail-order business plaintiff is receiving orders from customers in practically every State in the Union. Plaintiff caused a trade-mark application for "Kurvon" to be filed with the United States Patent Office.

May 21, 1954 defendant Kolkey was employed by plaintiff upon a salary basis as general manager. He was in charge of plaintiff's mail-order business and in

his capacity as general manager and supervisor Kolkey acquired an intimate knowledge of the methods and procedures used in conducting plaintiff's business, including the formula used by plaintiff in the making of its product. While employed by plaintiff, defendant Kolkey also learned plaintiff's advertising copy, plans, publications, and the names of all of plaintiff's customers.

It is further alleged that on July 21, 1954 plaintiff discharged defendant Kolkey. August 24, 1954 defendant instituted suit against the plaintiff to recover damages for the alleged breach of his contract of employment with plaintiff and for the enforcement of an alleged oral contract for the recovery of certain stock in the plaintiff corporation. Shortly after this suit was brought negotiations were commenced between the parties which culminated in a written agreement on September 3, 1954 between plaintiff and Kolkey. The pertinent paragraph of the agreement reads:

"In addition to the aforesaid release herein executed by the undersigned, and for and in consideration of the payment to him by the aforesaid corporation of the sum of Four Thousand ($4000.00) Dollars, and in further consideration of inducing the said corporation to part with the said sum of $4000.00 being paid to the undersigned this day, the undersigned covenants, warrants and agrees that he will not engage, either directly or indirectly, through himself or through any other person or persons, company, corporations or copartnership, in the mail order business, or in the retail, wholesale distributing, manufacturing or importing business concerning the sale and distribution of any pharmaceutical product connected with the enlargement or growth of the female breast and any pharmaceutical product of a similar kind or nature as "KURVON" now being manufactured by the aforesaid corporation and further covenants, warrants and

agrees that he will not associate himself with any other person or persons, company, copartnership or corporation in any capacity whatsoever, either as an employee, officer, stockholder, or promoter engaged in the retail, wholesale distributing, mail order, importing or manufacturing business of a product similar or like "KURVON," now being manufactured by the aforesaid corporation, all for a period of one year from the date hereof, anywhere in the United States of America."

August 10, while the parties were in negotiation for the settlement of defendant Kolkey's alleged claim, Kolkey, through his agents, organized the defendant Penn Pharmaceutical Distributing Company, an Illinois corporation, and began to distribute a product called "Charm-on" which also contained "Galega" as its principal ingredient. Defendants Kolkey and the Penn Pharmaceutical Distributing Company have used identical bottles and boxes in which to ship its pills with labels and instructions similar to those used by plaintiff. The brochure enclosed in each package of pills mailed to the customer by defendants was identical in form, advertising, copy, and art work with plaintiff's. Simulation of the outer package, bottle, color of pills, and name used by defendants were all intended to cause confusion in the minds of the general public and to divert to defendants the mail-order business which would otherwise flow to plaintiff.

In the concluding paragraphs the complaint prays for a preliminary and permanent injunction restraining defendants Kolkey and the Penn Pharmaceutical Distributing Company, its officers and agents from engaging in the manufacture and sale by mail order of a pharmaceutical pill containing "Galega" and for an accounting of the damages and profits accruing as the result of the wrongful conduct of the defendant. No answers were filed to the complaint by any of the

204

defendants. The application for the temporary injunction was opposed on the face of the complaint.

Defendant Kolkey challenges the validity of the agreement executed by him on the grounds that it is in restraint of trade and contrary to the public policy of the State. In support of his position he relies on Parish v. Schwartz, 344 Ill. 563. There the defendants agreed not to manufacture or sell certain bunghole appliances for a period of sixteen years, "either in the United States of America east of the Mississippi river or in any territory in which the company is now selling its products." The court in holding this contract void as in restraint of trade where it extends to the whole State, said at page 569, in adverting to Union Strawboard Co. v. Bonfield, 193 Ill. 420: "Within its own sphere the State has a public policy as a commonwealth, which the courts of the State regard and enforce, distinct from questions of policy affecting the nation at large. . . . It is against the policy of the State that its citizens should not have the privilege of pursuing their lawful occupations at some place within its borders and that a citizen should be compelled to leave the State to engage in his business and to support himself and family. It is true that a contract may be valid which embraces portions of more than one State. Trade and business are not affected by State lines, and a contract might be good in restraint of trade which embraced, within reasonable limits, parts of different States, but an agreement which applies to the whole State is void and cannot be enforced."

Continuing at page 570 the court, after citing with approval Tarr v. Stearman, 264 Ill. 110, said: "Every contract of this kind must be judged according to its special circumstances, and whether it is reasonable or contrary to public policy is a question of law. . . . It is at once obvious that the above principles are decisive of the question unless there exists such a state of fact that those principles are not properly applicable."

In a later opinion this court in Storer v. Brock, 267 Ill. App. 138, affirmed in 351 Ill. 643, held that a provision in a contract between two physicians that one will not practice medicine in the City of Chicago independently of the other who agrees to pay the one restricted a sum per month while he is not practicing without the City, is not invalid because unlimited as to time. In that case we recognized that the rule which formerly held restrictive covenants in agreements void has been greatly relaxed and in many jurisdictions abrogated. There are many factual distinctions between the present case and Parish v. Schwartz, 344 Ill. 563 and the cases cited therein. No decisions of the courts of review of Illinois have been cited in the briefs nor have we been able to find any involving a strictly mail-order business nation-wide in scope and confined to the manufacture and sale of a single item, such as a pharmaceutical pill.

In Voices, Inc. v. Metal Tone Mfg. Co., 119 N. J. Eq. 324, 182 Atl. 880, the complainant was the owner of a number of patents covering sound-producing devices known as "voices" and "criers" which were used in dolls and toys. He entered into an agreement with the defendants which provided that they would not manufacture or sell sound-producing devices in the United States for a period of eighteen years. The court held that since the business for which protection was sought in the complaint was nation-wide in scope the territory covered in the agreement was not too extensive but was reasonably required for the protection of the complainant, and that the period of limitation was reasonable.

In Eastman Kodak Co. v. Powers Film Products, Inc., 179 N. Y. Supp. 325, one Warren, an employee of Eastman Kodak Company executed an agreement not to disclose any knowledge gained in the course of his employment as to various processes and formulas relating to the making of raw film stock, upon termination of his employment, for a period of two years, and

206

that he would not engage in the photographic business at any point in the United States. This agreement was held valid.

The rule announced in Voices, Inc. v. Metal Tone Mfg. Co., 119 N. J. Eq. 324, 182 Atl. 880, and Eastman Kodak Co. v. Powers Film Products, Inc., 179 N. Y. Supp. 325 and cases there cited has been fully sustained in Larx Co., Inc. v. Nicol, 224 Minn. 1. At page 11 the court said: "The majority of courts recognize the validity of an agreement wherein the seller of a secret process, or an employe to whom a secret formula has been disclosed in connection with his employment, covenants not to disclose or make use thereof, either directly or indirectly, in competition with his employer or the owner thereof, even though such agreements be unlimited as to time and space. The test applied is the reasonableness of the restraint imposed, and where the business sought to be protected is nation-wide a covenant unrestricted as to time and territory is not necessarily unreasonable."

In the instant case the restrictive covenants of the agreement between the parties expire early in September of 1955. In the meantime the defendant Kolkey is free to engage in any business in this State or elsewhere except the manufacture and sale of a pharmaceutical pill containing "Galega." The allegations of the complaint clearly show that all the information defendant Kolkey has about the manufacture and sale of plaintiff's product "Kurvon," including the secret formula, was acquired while he was in plaintiff's employ, and at its expense. Because of the special circumstances in the case at bar, we are of the opinion that the rule announced in Parish v. Schwartz, 344 Ill. 563, upon which defendants rely, is not applicable.

In our view the cases heretofore cited, Voices, Inc. v. Metal Tone Mfg. Co., 119 N. J. Eq. 324, 182 Atl. 880, and Eastman Kodak Co. v. Powers Film Products, Inc., 179 N. Y. Supp. 325, are most analogous to the instant

case, and are decisive of the issues here. We cannot say that the restraint imposed by the order appealed from is more extensive territorially than is reasonably necessary to protect the plaintiff's business.

For the reasons stated, the decree is affirmed.

Decree affirmed.

KILEY, P. J. and FEINBERG, J., concur.