**ELRICK RIM COMPANY, a copartnership consisting of M. C. Elrick and M. F. Champlin, Plaintiff and Counterdefendant,**

v.

**Crules R. CHEEK, Trustee in Bankruptcy of Reading Tire Machinery Co., Inc. a corporation, Bankrupt and Ralph R. Reading, an individual, Defendants and Counterplaintiffs.**

No. 19538.

United States District Court
S. D. California,
Central Division.

June 26, 1961.

See also 157 F.Supp. 60.

Mason & Graham by Collins Mason, Los Angeles, Cal., George B. White, San Francisco, Cal., for plaintiff and counter-defendant.

Herzig & Walsh and Albert M. Herzig and Irving Sulmeyer by Albert M. Herzig, Los Angeles, Cal., for defendant and counterplaintiff.

YANKWICH, District Judge.

Before us is the Report of the Special Master, Leslie S. Bowden, Esq., filed January 24, 1961, determining damages, and the exceptions thereto, filed March 6, 1961. This is what I hope will be the final step in a patent litigation of long standing. It turns around the Letters Patent No. 272,148 issued to Ralph R. Reading on October 18, 1955. The original application sought a patent on a spraying apparatus and the method of applying it. Later, the application was divided and the patent as issued contained four claims, all relating to a method of applying rubber cement.

The complaint was filed February 23, 1956, by the plaintiff-counterdefendant Elrick Rim Company, to be referred to as Elrick, seeking a declaration of invalidity on the ground of anticipation, indefiniteness of claims and prior use for more than one year before the filing of the application for the patent. The contest was decided by this Court on December 5, 1957 in an opinion which has been published, Elrick Rim Company v. Reading Tire Machinery Co., Inc., D.C., 157 F.Supp. 60. Formal findings and judgment were entered on December 24, 1957. On appeal, the judgment was affirmed, the Court, however, disallowing the attorneys' fees. (Elrick Rim Company v. Reading Tire Machinery Co., Inc., 9 Cir., 1959, 264 F.2d 481) On remand, after petition for certiorari was denied by the Supreme Court (360. U.S. 920, 79 S.Ct. 1434, 3 L.Ed.2d 1535) an order was entered on August 24, 1959, naming Leslie S. Bowden, Esq., as Special Master and directing him to ascertain the damages. After the reference, Reading Tire Machinery Co., Inc., Reading's exclusive licensee, was adjudicated a bankrupt and its Trustee in Bankruptcy, Crules R. Cheek, has been substituted for it as a defendant in the case.

Extensive hearings were held before the Master, at various times, in the years 1959, 1960 and 1961. The Master's Report was filed on January 24, 1961. With it he transmitted a full stenographic transcript of the proceedings and the exhibits. The Report, in addition to the preamble and certain conclusions, which do not concern us, contained seven findings, which are printed in the margin.[1]

1. "The Master finds and reports:
    "1. Defendant and counter-plaintiff, Reading Tire Machinery Co., Inc., a corporation, by assignment from Ralph R. Reading is the exclusive licensee under the process patent.
    "2. That no royalty on the process patent belonging to the defendant and counter-plaintiff has been established.

"3. That the plaintiff and counter-defendant during the term embraced in this inquiry has sold 692 retreading machines with instructions on how to use the process embraced in the patent in suit.
    "4. That the defendant and cross-plaintiff, Crules R. Cheek, Trustee etc., produced testimony establishing a rea-

Objections to the Report were filed on March 6, 1961, which were heard on March 20, 1961, at which time leave was granted to file written briefs or memoranda. Five such memoranda, of various lengths, have been filed.

The gist of the Master's Report and findings is that the damages to be awarded should be based upon a royalty on the use of the process, amounting to six tenths of one cent per pound of camel-back used in the process. With this as a basis the Master recommends that an award be made in the amount of $142,-890.00. Elrick excepts to these findings.

## I

### The Effect Of A Master's Report

Under the Federal Rules of Civil Procedure we must accept the Master's findings of fact unless clearly erroneous. (Rule 53(e) (II), Federal Rules of Civil Procedure, 28 U.S.C.A.) The higher courts have enjoined us to apply this mandatory provision in all cases involving "purely a factual issue". Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 689, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515.[2]

This principle is followed rigorously in dealing with findings of masters or referees. And this principle is applicable even if the facts lend themselves to a different interpretation. As stated by the Court of Appeals for the Ninth Circuit in Nelse Mortensen & Co., Inc. v. Treadwell, 1954, 217 F.2d 325, 329:

> "The referee found squarely upon the facts. *The District Court was bound by his findings, by law.*" (Emphasis added.)

The accounting period, October 18, 1955 to December 9, 1957, has been accepted by both sides. Elrick, however, objects to the adoption of the royalty method for computing the damages.

---

sonable royalty of $\frac{6}{10}$ths of 1¢ per pound of camel back used in the practice of the Reading process patent and on the basis of said royalty the master finds that the said $\frac{6}{10}$ths of 1¢ per pound of camel back used in said practice is a reasonable royalty.

"5. The defendant and counter-plaintiff produced testimony establishing that the average user of the process retreads 3,000 tires per year and uses 10 pounds of camel back per tire or a total of 30-000 pound of camel back per year which is equal to 2,500 pounds of camel back per month.

"6. The total number of machines with instructions on how to use the process patent, sold by the plaintiff and counter-defendant is 692 and the total number of months elapsing from the dates of purchase of said machine is 325 and upon this bases the amount of damages due from the plaintiff and counter-defendant to Crules R. Cheek, Trustee in Bankruptcy of the Estate of Reading Tire Machinery Co., Inc., a coroporation, at $\frac{6}{10}$ths of 1¢ per pound of camel back used on said machines for the period herein referred to, is found to be One Hundred Forty-Two Thousand Eight Hundred Ninety and No/100 ($142,890.00) Dollars.

"7. The costs of this accounting proceeding should be assessed against the plaintiff and counter-defendant."

**2.** The entire passage is worth quoting, because it condemns the action of a trial judge who declines to accept a finding of his Master merely *because he has a different view as to the basis for compensation:*

"On the issue as to the extent of the actual productive work performed, we are constrained to agree with the special master that it began and ended at the scheduled hours. *This was purely a factual issue.* The master made his findings in this respect through the weighing of conflicting evidence, the judging of the reliability of witnesses and the consideration of the general conduct of the parties to the suit. The master thereby concluded that productive work did not begin before the scheduled hours except in a few instances which were counter-balanced by occasions when work began after the scheduled hours or ended before the scheduled cessation of productive work. Our examination of the record leads us to acquiesce in these findings since they are supported by substantial evidence and are not clearly erroneous. *And the court below correctly held that the District Court erred in failing to accept these findings and in creating a formula of compensation based upon a contrary view.*" 328 U.S. at page 689, 66 S.Ct. at page 1193. (Emphasis added)

They contend that as they sold instruments and devices in conjunction with the use of which the process was infringed, the only damages to be awarded to the defendants, to be referred to as Reading, are the profit they made in the sale of the machines (692, as found by the Master) during the period of accounting.

## II

### Damages in Patent Infringement

There is evidence in the record given by the inventor and others that in a case of this character a royalty based upon the amount of camelback used is recognized in the industry and is fair in the circumstances. Before considering the sufficiency of the evidence to sustain the Report of the Master, we advert to the fact that the provision as to damages in patent cases recognizes various methods of ascertaining damages, such as loss of profits to the patentee, profits to the infringer, which must be

> "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the inventor by the infringer, together with interest and costs as fixed by the court."

(35 U.S.C.A. § 284)

Expert testimony is specifically allowed to be received to aid in determining damages or

> "what royalty would be reasonable".

(35 U.S.C.A. § 284)

■ As the Supreme Court has said, in a leading case, the object of the various methods of computing damages is to compensate the inventor for what "has been taken" from him by the infringement:

> "As the exclusive right conferred by the patent was property, and the infringement was a tortious taking of a part of that property, the normal measure of damages was the value of what was taken. So, had the plaintiff pursued a course of

granting licenses to others to deal in articles embodying the invention, the established royalty could have been proved as indicative of the value of what was taken, and therefore as affording a basis for measuring the damages. Philp v. Nock, 17 Wall. 460, 462 [21 L.Ed. 679]; Birdsall v. Coolidge, 93 U.S. 64, 70 [23 L.Ed. 802]; Clark v. Wooster, 119 U.S. 322, 326 [7 S.Ct. 217, 30 L.Ed. 392]; Tilghman v. Proctor, 125 U.S. 136, 143 [8 S.Ct. 894, 31 L.Ed. 664]. But, as the patent had been kept a close monopoly, there was no established royalty. In that situation it was permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved. Not improbably such proof was more difficult to produce, but it was quite as admissible as that of an established royalty." Dowagiac Manufacturing Company v. Minnesota Moline Plow Company, 1915, 235 U.S. 641, 648, 35 S.Ct. 221, 224, 59 L.Ed. 398.

See the writer's opinion in Laskowitz v. Marie Designer, Inc., D.C.Cal.1954, 119 F.Supp. 541, 554–555.

■ When the royalty method is adopted all that is expected is a *reasonable* approximation. The determination of the matter involves a consideration of factors varying from case to case. Filtex Corporation v. Amen Atiyeh, 9 Cir., 1954, 216 F.2d 443, 448; The United States National Bank of Portland, Oregon v. Fabri-Valve Company of America, 9 Cir., 1956, 235 F.2d 565, 569.

### III

### Methods of Computation: Reasonable Approximation

The use of any of the available methods presents difficulties. But if the trier of facts determines the damages according to some accepted basis that is not inherently unfair, it will be sustained. So, where it was found that the infringer

operated at a loss so that profits could not be used as a measure of damages, and because the plaintiff had not granted any licenses infringement based on lost sales could not be readily ascertained, the Court approved a finding of damages based upon a percentage royalty basis, saying:

> "We think there is ample evidence to justify the finding below that the coal pier of the defendant, on which the infringing machine was used, was operated at a loss. This, of course, prevents the use of profits as a measure of damages. Plaintiffs have not granted any licenses under the patent so we cannot use, as a method of assessing damages, the royalties paid by licensees. Nor is it practical to fix the damages by the extent to which the infringement prevented the plaintiffs from deriving profits through sales lost as a result of infringement. Accordingly, we approve the royalty basis urged by the court below as a fair method for assessing the damages." Chesapeake & O. Ry. Co. v. Kaltenbach, 4 Cir., 1941, 124 F.2d 375, 376.

The statute itself shows a preference for a royalty basis by providing that whichever method is adopted in awarding damages, it is to be

> "in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S. C.A. § 284)

We advert to the fact that this was a process patent. The case was tried upon that theory in this Court. Throughout the findings this fact is stressed.[3]

■■ In the circumstances, and under the testimony in the record, the selection of this as a method of computing damages cannot be questioned. Elrick and their expert denied that this method was properly chosen. From what precedes it is evident that, both under the law and the facts, the choice was justified. Assuming that contradiction exists between the two groups of witnesses or experts or even that there are inconsistencies in the testimony of Reading's witnesses, the resolution of that conflict was for the Master. As stated in Hoppe v. Rittenhouse, 9 Cir., 1960, 279 F.2d 3, 10:

> "But what of the evidence regarding the understanding upon which the Gammills made their loans? Must we accept the trustee's proffered evidence as invincible and dismiss the other as wholly insignificant, requiring but one conclusion contrary to the finding of the referee? We think not. The evidence taken as a whole is clearly susceptible of more than one inference from which different conclusions could be reached; under such circumstances, the particular factual conclusions adopted by the referee are supported by substantial evidence." (Emphasis added)

---

3. Characteristic are the following brief Findings:

**"X.**

"The Reading patent is on the method of spraying rubber cement and is not dependent upon the particular means shown or employed. In the conception and perfection of this method, Reading exercised invention and exceeded the skill of the art.

**XI.**

"The prior art does not anticipate the patented process. Moreover, the prior art apparatus is not, without modification in the light of his teachings, adapted to carry out the Reading patented process. The presumption of validity of the patent resulting from the grant thereof by the Patent Office is unaffected by the prior art. The patent is not invalid for prior use or sale nor on account of any estoppel.

**XII.**

"The plaintiff and counter-defendants provided equipment equivalent in the practice of the patented method to that illustrated and described in the patent in suit and provided instructions and aided and abetted the purchasers and users of said equipment in the utilization thereof in a manner identical to and equivalent to the method disclosed and specified in the patent in suit and infringing each of the claims thereof."

## IV

### The Correctness of the Master's Conclusion

■ A study of the entire record convinces me that the Master was right. It is true that at the time the patent was issued Reading had not established a royalty on the process. But the fact is immaterial. For one thing, the suit instituted by Elrick followed so quickly upon the granting of the patent that there was no time to establish a definite policy. And even if Reading, at the beginning, gave a license free use of the process with certain spraying machines, which he was selling, he is not prevented from insisting that in the circumstances in the case the only fair measure of damages is a reasonable license fee. The problem of licensing fees is not easy. Of necessity, many elements, depending on a particular situation or on the opinion of persons familiar with the art, must enter into the determination. The Court of Appeals for the Ninth Circuit in Faulkner v. Gibbs, 1952, 199 F.2d 635, 638 has given us the elements for determining whether there was an established royalty in these words:

> "it must have been paid prior to the infringement complained of; it must have been paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have had occasion to use the invention; and it must have been uniform at the places where licenses were issued."

■ As already stated, none was established in this case. And the time between the issuance of the patent and the institution of this action was too brief to permit establishment. But there is credible evidence in the record that the method used is reasonable in the circumstances and that others in the industry, in selling rubber spraying apparatuses, have adopted a method of computing the saving of camelback as a criterion for the royalty. The Court of Appeals for the Ninth Circuit, in the case just referred to, envisaged the difficulties encountered in establishing royalties and warned us against seeking a mathematical formula in these words:

> "What is a reasonable royalty is a question of fact. A reasonable royalty is an amount which a person, desiring to use a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to use the patented article at a reasonable profit. The primary inquiry, often complicated by secondary ones, is what the parties would have agreed upon, if both were reasonably trying to reach an agreement.

> *"There is no mathematical formula for the determination of a reasonable royalty.* The property loss of a patentee from infringement may arise from such varying facts and circumstances that each case must be controlled by those peculiar to it and except in rare instances the loss can only be determined by reasonable approximation." At page 639. (Emphasis added)

■ I am of the view that the Master in this case has avoided the "vicarious generosity" against which courts have warned us, and has been rather "conservative in fixing the amount." At page 639.

### Summary and Conclusion

■ In what precedes we have stated the reasons for our accord with the Master's method. To summarize briefly and amplify them:

The patent involved is a process patent. The benefit to the infringer resulted from the savings to the customers using the process in retreading tires. He should be made to surrender this benefit in order to "compensate [the patentee] for the infringement". 35 U.S.C.A. § 284. See, Hartford National Bank and Trust Company v. E. F. Drew & Co., Inc., D.C. Del.1960, 188 F.Supp. 347; 188 F.Supp. 353, 358–360. He became a "user" of

the Reading process through his customers.[4]

To base damages on profits made on the spraying devices sold by Elrick would be unrealistic and unfair, in view of the hidden nature of the real profits,—saving in poundage or camelback. The more so as Elrick, at times, deliberately sold the machines it was handling below cost, to stifle competition.

The Special Master was right in reaching his conclusions. Hence the following ruling:

1. The Court adopts the Report of the Master in its entirety, overrules each and every objection and exception thereto and orders judgment to be entered in favor of Crules R. Cheek, only, Trustee in Bankruptcy of the Estate of Reading Tire Machinery Co., Inc. a corporation, exclusive licensee of the patent, in the sum of $142,890.

2. Costs of the accounting, including the fee heretofore allowed to the Master in the amount of $5,600, shall be taxed as costs, to be paid by plaintiff-counterdefendant, Elrick Rim Company.

3. In view of the statements made at the oral argument, which the court has caused to be transcribed, the ruling on the matter of attorneys' fees for past or present work is deferred until further hearing on the separate motion already filed or others to be filed. Jurisdiction is retained for such purposes.

4. Reading's interest, as exclusive licensee, has been transferred to Reading Tire Machinery Company, Inc., and, through bankruptcy, to the Trustee in Bankruptcy. The claim of Ralph R. Reading, as an individual is, therefore, dismissed, without prejudice.

Formal judgment to be prepared by counsel for the Trustee in Bankruptcy.

---

**4.** This conclusion accords with the teaching of Chesapeake & O. Ry. Co. v. Kaltenbach, 4 Cir., 1941, 124 F.2d 375, 376, and Faulkner v. Gibbs, 9 Cir., 1952, 199 F.2d 635, 638. There is nothing contrary in Enterprise Mfg. Co. v. Shakespeare Co., 6 Cir., 1944, 141 F.2d 916, pressed upon us by Elrick in its exceptions. There, it was argued that because no substantial loss could be shown by the patentee the damages, if any, to be assessed should be nominal. Rejecting the argument and sustaining an award based on a reasonable royalty the court said:

"In an accounting for damages for infringement. each case is controlled by its own peculiar facts and circumstances. *Pecuniary loss in any event can be determined only by reasonable approximation. The actual value of what has been appropriated is always the ultimate in appraisement.* If actual value can be ascertained by a reasonable apportionment of profits and damages, that course should be pursued; *but if this cannot be accomplished, the nature of the invention, its utility and advantages, and the extent of use involved, are elements to be considered in determining a reasonable royalty.* The District Court recognized and applied these principles. See Clark v. Schieble Toy & Novelty Co., 6 Cir., 248 F. 276; United States Frumentum Co. v. Lauhoff, 6 Cir., 216 F. 610.

"The argument of appellee that the improvement disclosed in the patent under consideration was without value, or of only nominal value, was rightly rejected. *The appellee, by infringing use, has paid tribute to the utility of the device infringed.*" At page 920. (Emphasis added)

There the infringer had embodied the patented device as a part of a fishing reel which the infringer was selling *for use by the purchasers of the reel.* As it was impossible to evaluate the patented device separately, the royalty method was approved. So here, as it is impossible to evaluate separately the Reading spraying methods which Elrick, wrongfully, sold with the spraying devices, *for use by the buyers,* the royalty method is equitable in the extreme.