CENTRAL SPECIALTIES CO., corporation of the State of Illinois, Plaintiff,

v.

Robert G. SCHAEFER and Edward E. Schaefer, Defendants.

Robert G. SCHAEFER, Counter-Plaintiff,

v.

William BALLENGER, Robert Ballenger, and Central Specialties Co., corporation of the State of Illinois, Counter-Defendants.

No. 69 C 293.

United States District Court, N. D. Illinois, E. D.

Feb. 12, 1970.

Jack Dominik, of Dominik, Knechtel & Godula, Chicago, Ill., for plaintiff.

Melvin Jager, of Hume, Clement, Hume & Lee, David Schulman of Prince, Schoenberg & Fisher, Chicago, Ill., for defendant Robert Schaefer.

Jay Erens, of Levy & Erens, Chicago, Ill., for defendant Edward Schaefer.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Central Specialties Co. (Central), an Illinois corporation, brings this action against Edward E. Schaefer and his son Robert G. Schaefer (Robert), alleging patent infringement, breach of contract, unfair competition, and conspiracy. Robert answered the complaint and filed a counterclaim against Central and two of its officers, W. and R. Ballenger. This cause is now before us on Robert's motion for summary judgment as to all counts of the complaint.

■ Summary judgment is appropriate only when there is no substantial factual controversy which requires a trial and one party is entitled to prevail as a matter of law. Silverstein v. United States, 293 F.Supp. 1106, 1110 (N.D.Ill.1968). The movant has the burden of establishing the absence of a genuine factual issue. 2361 State Corp. v. Sealy, Inc., 402 F.2d 370, 375 (7th Cir. 1968). Throughout our consideration of this motion, we must keep in mind that all facts must be viewed in the light most favorable to the opponent of the motion and that all doubts must be resolved against the movant. United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Zahora v. Harnischfeger Corp., 404 F.2d 172, 175 (7th Cir. 1968); Greenebaum Mortgage Co. v. Town and Garden Associates, 385 F.2d 347, 349 (7th Cir. 1967).

In that part of the Complaint alleging a breach of contract, plaintiff alleges that among the documents executed by defendants in connection with the sale of business and assets to Central was a contract not to compete for a period of five years with Central. Complaint, ¶ 8, Exhibit D. The Complaint also alleges that Robert was paid a salary of not less than $20,000.00 per year in "further consideration" of his signing that contract and that Robert "did conspire to enter into direct competition with Plaintiff * * *." Id. ¶¶ 9, 10.

At least the following facts are undisputed: E. and R. Schaefer executed a contract on June 14, 1965, which contains a convenant prohibiting them from competing with Central for five years. The covenant not to compete states:

"Schaefer and Robert G. Schaefer do hereby severally agree that they will not, for the period of 5 years after the closing date, either directly or indirectly, work for or become associated with any other person, firm or corporation engaged in the manufacture and/or sale of competitive items of merchandise serving the same purposes as the merchandise, except window shade cornice heads, sold by Corporate-Seller in the fiscal year ended April 30, 1965, and that they, or either of them, will not individually sell or offer for sale, in said period, any such competitive item of merchandise;"

After Robert's termination from Central, he contacted some suppliers and customers of Central for the purpose of manufacturing and marketing products in Competition with Central. (Robert's Memorandum in Support of his Motion for Summary Judgment, at 2–3.)

We will assume, without deciding, that the contract of June 14, 1965, is supported by sufficient consideration. Two questions of law are presented by the defendant with respect to this aspect of the complaint. First, defendant Robert asks if the contract of June 14, 1965, is enforceable against him. Robert contends that the contract is not enforceable against him because it lacks consideration and, as the covenant not to compete runs for five years and contains no territorial limitations, that it is void as an unreasonable restraint of trade. Second, he asks whether, if enforceable, the contractual obligations were released by a document executed on April 16, 1968.

■■ On the ground that contracts in general restraint of trade are unreasonable and void as against public policy, Illinois courts have, for over seventy years, nullified such contracts. See, e. g., House of Vision, Inc. v. Hiyane, 37 Ill.2d 32, 225 N.E.2d 21 (1967); Parish v. Schwartz, 344 Ill. 563, 176 N.E. 757 (1931); Lanzit v. J. W. Sefton Manufacturing Co., 184 Ill. 326, 56 N.E. 393 (1900). As far back as Hursen v. Gavin, 162 Ill. 377, 379–380, 44 N.E. 735 (1896), quoted with approval in Parish, a contract in general restraint of trade was defined as one in which a party bound himself not to pursue at all a particular trade or business or not to pursue the activity within a state or country.

A covenant not to compete for twenty-five years "in the State of Illinois, or anywhere else where so doing may con-

flict with the business interests or diminish or lessen the profits of" the covenantee was construed as covering the entire United States and, as such, unenforceable. Union Strawboard Co. v. Bonfield, 193 Ill. 420, 423, 427, 61 N.E. 1038 (1901). The court held that it was immaterial to the validity of the contract that there was good consideration and that the restraint was no greater than necessary to protect the covenantee from competition. *Id.* at 426, 61 N.E. 1038. The court found it to be against public policy to deprive a citizen of carrying on a lawful occupation at some place within the state's border, to deprive other citizens of the covenantor's industry, and to force the covenantor to leave the state to support himself and his family. *Id.* at 427, 61 N.E. 1038. A similar covenant to refrain from pursuing a particular trade for ten years in the states of Illinois and Indiana was held void in Lanzit v. the J. W. Sefton Manufacturing Co., 184 Ill. 326, 331–332, 56 N.E. 393 (1900).

More recently, in the *Parish* case, the restrictive covenant which was voided prohibited competition for sixteen years in a territory defined as " 'in the United States of America east of the Mississippi River or in any territory in which the company is now selling its products, * * *' " 344 Ill. at 565, 176 N.E. at 758. Similarly, in Beltone Electronics Corp. v. Smith, 44 Ill.App.2d 112, 194 N.E.2d 21 (1963), a state court invalidated a post-employment covenant not to compete the duration of which was confined to one year, but which was silent as to a territorial limitation.

■ In prohibiting defendant from competing anywhere for five years with plaintiff, the June 14, 1965 contract is clearly one in general restraint of trade. We find that the contract which restricted competition by defendant anywhere for a period of five years and which defendant allegedly breached is void and unenforceable. From *House of Vision*, where the territorial restriction was confined to only thirty miles from plaintiff's two offices, but with the time limit on the competitive restraint unspecified, to *Parish, Union Strawboard,* and *Lanzit,* Illinois courts have refused to enforce general restraints of trade such as the one found in the contract which plaintiff seeks to enforce.

■ Where restraining covenants are partial, that is, limited in both area and time, they are permissible if reasonable, Union Strawboard Co. v. Bonfield, 193 Ill. 420, 421, 61 N.E. 1038 (1900), that is, if they are "reasonably related to safeguarding the employer without putting unreasonable restraints upon trade." Beltone Electronics Corp. v. Smith, 44 Ill.App.2d 112, 115, 194 N.E. 2d 21, 23 (1963); *accord,* The House of Vision, Inc. v. Hiyane, 37 Ill.2d 32, 37, 225 N.E.2d 21 (1967). In these situations, the court will seek to determine if the restraint imposed is no greater than necessary for the employer's protection, if the hardship on the employee is not undue, and if the public is not injured. Beltone Electronics Corp. v. Smith, 44 Ill.App.2d 112, 115–116, 194 N.E.2d 21 (1963). Even where the covenants are so limited, however, their reasonableness must be construed with respect to their "special circumstances" which "generally involve elements of trade secrets or unfair dealing." In re Solar Textiles Co. v. Fortino, 46 Ill.App.2d 436, 441–442, 196 N.E.2d 719, 722 (1964). In the absence of special circumstances such as trade secrets, the state court in *Solar Textiles* refused to enforce a noncompetition agreement which restricted a former employee from selling grille cloth for five years to certain manufacturers within a 350 mile radius of Chicago and New York City.

Parenthetically, in the only Illinois case about which we know, where a court upheld a contract which contained a noncompetition provision that was unlimited as to either time or geography, or at least was statewide in application, a secret chemical formula was involved. See World Wide Pharmacal Distributing Co. v. Kolkey, 5 Ill.App.2d 201, 125 N.E. 2d 309 (1955). *Kolkey* has been limited to its facts and is not applicable here.

See Beltone Electronics Corp. v. Smith, 44 Ill.App.2d 112, 116–117, 194 N.E.2d 21 (1963). In the instant case, there is no allegation that any trade secret or process or mechanism known only to plaintiff or through plaintiff to his employees. Compare, In re Solar Textiles Co. v. Fortino, 46 Ill.App.2d 436, 442–445, 196 N.E.2d 719 (1964). Consequently, even if the restraint in this contract were partial and not general, in the absence of special circumstances to justify the duration of the restraint, the contract would still be unenforceable.

■ Nor do we think that a contract containing an illegal restraint can be reformed so as to become enforceable within a reasonable geographic area. In L & R Insurance Agency Inc. v. McPhail, 92 Ill.App.2d 107, 235 N.E.2d 153 (1968), the court held unenforceable a contractual provision precluding plaintiff's employees from soliciting or selling life or accident insurance to certain persons, which provision was unlimited as to time and covered the state of Illinois. The court held that the scope of the contract as to time and area was unreasonable, that it was not necessary to protect the plaintiff's interest, and that it appeared "to be a device to protect the plaintiffs against competition * *." Id. at 111–112, 235 N.E.2d at 156. "Since the restriction was void and unenforceable, the trial court could not cure the restriction by imposing a limitation on it." Id. at 113, 235 N.E.2d at 156. See House of Vision, Inc. v. Hiyane, 37 Ill.2d 32, 39, 225 N.E.2d 21 (1967).

In view of our decision regarding the enforceability of the contract of June 14, 1965, we need make no comment on the effect of the release of April 16, 1968, on that contract.

In the unfair competition count of the Complaint, plaintiff alleges that Robert, as an employee of Central, gained certain information regarding suppliers of parts for Central as well as Central's operational costs and subsequently misappropriated that information. The use of this information allegedly allowed Robert to manufacture and market a competing item faster than it would have been possible for a novice third party to do.

■ Misuse of confidential information or trade secrets constitutes unfair competition. James C. Wilborn & Sons, Inc. v. Heniff, 95 Ill.App.2d 155, 162, 237 N.E.2d 781 (1968); Schulenburg v. Signatrol Inc., 50 Ill.App.2d 402, 405, 200 N.E.2d 615 (1964). A trade secret is some confidential information related to a particular business or trade. Id. at 407, 200 N.E.2d 615. It has often been described as a "plan or process, tool, mechanism or compound known only to its owner and those employees to whom it is necessary to confide it." Snyder v. Hamilton, 39 Ill.App.2d 352, 360, 189 N.E.2d 97, 100 (1963). Examples of trade secrets are customer lists, formulae, patterns and blueprints. Schulenburg v. Signatrol Inc., 50 Ill.App. 2d 402, 407, 200 N.E.2d 615 (1964).

Plaintiff contends that suppliers prices, supplier delivery reliability, subcontractor manufacturing costs, and the names and requirements of customers are those kinds of information which may be the subject of misuse so as to constitute unfair competition. However, plaintiff does not cite one case which so characterizes the type of information defendant allegedly misused.

■ Defendant is not accused of having misused any plan, process, formula, pattern, tool, mechanism, compound, or list. Moreover, as plaintiff has acknowledged in its Complaint, the names of wire-forming welding, plating and other specialists may easily be found in the Chicagoland business telephone directory. How to function in the particular trade and how to sell customers are not considered trade secrets. Snyder v. Hamilton, 39 Ill.App.2d 352, 360, 189 N.E.2d 97 (1963). Nor do we think that the knowledge of the capacities of suppliers or their pricing policies is a trade secret which may be protected.

"Our free economy is based upon competition. One who works for another cannot be compelled to erase from his

mind all of the general skills, knowledge, acquaintences and the over-all experience which he acquired during the course of his employment. * * * Absent special circumstances, such a person cannot be prevented from seeking out customers of his former employer when he has entered into a competing business or gone to work for a competitor."

Revcor, Inc. v. Fame, Inc., 85 Ill.App. 2d 350, 357, 228 N.E.2d 742, 746 (1967).

■ Taking the facts as alleged to be true, we do not find that defendant has misused trade secrets or confidential information so as to have unfairly competed with plaintiff.

■ The conspiracy count falls as a matter of course. There can be no unlawful conspiracy to compete in violation of a contract if the contract is itself unenforceable. Nor can there be a conspiracy to unfairly compete with plaintiff in the absence of any enforceable non-competition agreement or any trade secrets.

We turn now to a consideration of Count I of the Complaint and to the Supplemental Complaint, both of which deal with patent infringement. Count I alleges that plaintiff acquired from defendant Edward Schaefer United States Letters Patent No. 2,967,623 ('623 patent) which is entitled "Display Hangers." See Complaint, Exhibit A. Plaintiff further charges that Robert is now producing and/or delivering between 15,000 and 30,000 bedspread hangers which are substantially like the patented hanger in content and form. A picture of the allegedly infringing hanger is submitted as Exhibit B to the Complaint.

Robert has submitted an affidavit in support of his summary judgment which admits that Plaintiff's Exhibit B is a copy of a photograph used in advertising hangers designed by himself. These hangers, identified as Defendant's Exhibit 1, were sold by defendant from September, 1968, until January, 1969. In January and May, 1969, Robert's bed-spread hangers were modified as exemplified by Defendant's Exhibits 2 and 3, respectively. See generally, Robert's Affidavit in Support of Summary Judgment.

The operation of the kind of hangers about which we are concerned is rather simple. One end of the hanger is temporarily opened so that an item such as a bedspread or drapery could be placed on the crossbar. Once the item is on the bar, the end of the hanger is closed so that the crossbar supports the item. The alleged infringement of the '623 patent concerns the structure at the end of the hanger wire. More specifically, we are interested in whether the loops at the openable end of the hanger wires are open, substantially closed, or closed.

Prior to the granting of the '623 patent, it was known that the free end of a hanger crossbar could be supported by an open loop. The prior art is exemplified by United States Letters Patent No. 1,512,130 issued to Pardue (Defendant's Exhibit 5B, Fig. 1) and Belgium Patent No. 512,926 issued to Piette (Defendant's Exhibit 5C, Fig. 4).

1952 Piette Patent (Fig. 4)

[A2888]

The distinctive feature of the '623 patent is that it provides for the use of a substantially closed loop as a support for the hanger crossbar. End and plan views of this aspect of the '623 hangers follow:

Plaintiff's '623 Patent Hanger (Figure 4) (End View)

Plaintiff's '623 Patent Hanger (Plan View)

An examination of the file history of the '623 patent indicates that the closed loop claim was critical to the issuance of the patent. Originally, the first claim of the patent application called for the crossbar to have a "pin" projecting rigidly from open end of the bar and "an elongated support member * * * having * * * a curved portion detachably engaged with said pin." Defendant's Exhibit 5A, p. 8, Claim 1. The Patent Office rejected this broad claim, however, noting that the Piette patent already provided for a curved loop of hook. Defendant's Exhibit 5A, pp. 9, 14–15. See also, Defendant's Exhibit 5A, p. 20.

Subsequently, the patentee cancelled his original claims and added a new claim, Claim 5, which eventually issued as Claim 1 of the '623 patent. The new claim called for the crossbar to have an "axial projection" and the hanger wire to have one end portion "formed into a substantially closed loop for receiving and encircling said axial projection." Defendant's Exhibit 5A, p. 21; Defendant's Exhibit 4, Col. 4, lns. 29, 36–39. In distinguishing Claim 5 from Piette and others, the patentee remarked:

"Note that the loop is defined as 'substantially closed' for receiving and encircling' the rigid axial projection or pin on the crossbar.

\* \* \* \* \* \*

The wire end 12 of Piette is moved into and out of the *open* portion 10 by general radial or lateral deflection of the wire end 11."

Defendant's Exhibit 5A, pp. 22–23.

Notice of allowance of this patent was given shortly after the new claim was filed. Defendant's Exhibit 5A, p. 24.

In view of this undisputed file wrapper history, we find as a matter of law that plaintiff is estopped from extending the scope of the '623 patent beyond the claim of a hanger with a closed loop which is designed to receive and encircle a rigid pin extending from a crossbar.

"The rule that governs the question before us is stated in I.T.S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, at page 443, 47 S.Ct. 136, at page 141, 71 L.Ed. 335: 'It is well settled that where an application for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent.'

"Furthermore, a patentee that has narrowed his claim after rejection to secure allowance, is held strictly to the letter of the limited claims granted to him; by his amendment he recognizes the difference between the old claims and the new, and proclaims 'his abandonment of all that is embraced in that difference.' Union Carbide & Carbon Corp. v. Graver Tank & Mfg. Co., 7 Cir., 196 F.2d 103, 107." The Ekco Products Co., Inc. v. Chicago Metallic Mfg. Co., 347 F.2d 453, 454–455 (7th Cir. 1965).

*accord,* Keating v. Stearnes Imperial Co., 347 F.2d 444, 447 (7th Cir. 1965); Henriksen v. Cory Corp., 327 F.2d 409, 410, 412 (7th Cir. 1964); La Salle Street Press, Inc. v. McCormick & Henderson, Inc., 292 F.Supp. 276, 280 (N.D. Ill. 1968).

We turn now to a consideration of the three hangers which have been produced by Robert as they relate to the '623 patent. It is uncontested that Defendant's Exhibits 2 and 3 hangers, which are the only kind sold by defendant since January, 1969, Robert's Affidavit in Support of Summary Judgment, ¶¶ 11–

15, have similar structures as far as the '623 patent is concerned:

Defendant's Exhibit 2 and 3 Hangers (End View)

Defendant's Exhibit 2 and 3 Hangers (Plan View)

Neither hanger wire includes "a substantially closed loop for receiving and encircling" an axial projection or pin. Both obviously employ an open U-shaped support loop. Firm support for the crossbar is virtually impossible anywhere except in the open loop. Defendant's Exhibits 2 and 3 hangers are not specifically alleged in the Complaint to have infringed the '623 patent and plaintiff hints at no such infringement in its brief. We find as a matter of law that these two hangers do not infringe the '623 patent.

The structure of Defendant's Exhibit 1 hanger, sold only from September, 1968, through January, 1969, as it relates to the '623 patent is as follows:

Defendant's Exhibit 1 Hanger (End View)

Defendant's Exhibit 1 Hanger (Plan View)

As demonstrated in these pictures and in Plaintiff's Exhibit B, the crossbar pin normally rests on and is supported by a U-shaped open loop. The Exhibit 1 hanger also includes a pin guide loop which is substantially closed. According to defendant, this closed loop is used to guide or cam the crossbar pin into the U-shaped open loop, and to eliminate a sharp projection which may otherwise snag the item placed on the hanger," not for the purpose of supporting the cross-

bar. Robert's Affidavit in Support of Summary Judgment, ¶¶ 7–10.

■■■ Plaintiff has not contested the fact that the normal position of the crossbar is in the open U-shaped loop and not in the substantially closed pin guide loop. Nor has defendant contested defendant's claim that he has only instructed his customers to use the open loop to support the crossbar. Now, operating a crossbar pin by lateral deflection of the bar into and out of an open loop was taught by prior patents. Moreover, while it is physically possible to insert the crossbar pin into the substantially closed pin guide loop and thereby support the crossbar, there is no hint by plaintiff that such use was ever intended or expected by defendant or ever practiced as a matter of fact. Under these circumstances, we cannot say that the presence of a substantially closed pin guide loop infringes the '623 patent. In view of this uncontested factual situation, we think it clear that the '623 patent is not infringed by the Defendant's Exhibit 1 hanger.

In its Supplemental Complaint, plaintiff also alleges that Robert, while employed by plaintiff, did invent another hanger construction, for which United States Letters Patent No. 3,463,324 ('324 patent) was issued and subsequently assigned to plaintiff. See Complaint, Exhibit C. Plaintiff contends that Claim 4 of the '324 patent is infringed by defendant's hangers. Plaintiff also charges that defendants, through acts of fraud, have infringed the '324 patent and because of the fraud committed prior to issuance of the patent should also be held for damages occurring prior to issuance.

Originally filed on December 23, 1966, plaintiff's '324 patent, entitled "Display Hanger with Crossbar and Removable Support Assembly," was issued on August 26, 1969. Defendant's Exhibit 7. Among other things, Claim 4 of the '324 patent requires an "anchor portion" for securing the hanger wire inside one end of the tubular crossbar. The struc-

ture comprises an "off-set triple bend" which includes "a tube bearing flat" at the far end, "a nib tube contact bend at an intermediate portion," and "an end cap aperture engaging portion on an axis substantially midway between the remote point defined by the nib top, and the remote surface defined by the base of the tube bearing flat." Defendant's Exhibit 7, Col. 5, lns. 5–9. The triple bend construction is illustrated below:

Plaintiff's '324 Patent
Hanger (Figure 8)

For the purposes of this motion, Robert admits that the "jam fit" on the anchored end of the Exhibit 1 and 2 hangers is structually similar to the "off-set triple bend" jam fit of the '324 patent. However, Robert states that he neither made, used, nor sold an Exhibit 1 or 2 hangers after May, 1969. Robert's Affidavit in Support of Summary Judgment, ¶ 14. This material fact is undisputed.

■■ We concluded from this factual setting that defendant's activities concerning these two kinds of hangers ended prior to the issuance of the '324 patent. As the law has been clear for over a century that patent infringement cannot occur prior to the issuance of the patent, Gayler v. Wilder, 51 U.S. (10 How.) 477, 492, 13 L.Ed. 504 (1850); Tom Lockerbie, Inc. v. Fruhling, 207 F.Supp. 648, 655 (E.D.Wis. 1962); cf. Eagle Iron Works v. McLanahan Corp., 303 F.Supp. 1029, 1035 (W.D.Pa.1969); defendant could not have infringed the '324 patent with his Exhibit 1 and 2 hangers.

Plaintiff's allegation that Robert seized on certain confidential information after this action was filed and his

reference to Chesapeake & Ohio Ry. Co. v. Kaltenbach, 124 F.2d 375, 376–377 (4th Cir. 1941) is of no help. The *Kaltenbach* damage rule is not applicable where plaintiff fully disclosed its discovery prior to the creation of the allegedly breached confidence. Swan Carburetor Co. v. Nash Motors Co., 133 F.2d 562, 567 (4th Cir. 1943). In the instant case, plaintiff's Exhibit C, Fig. 8, attached to the Complaint, clearly disclosed the unique triple bend feature before any confidential information was revealed.

Defendant's Exhibit 3 hanger incorporates a J-shaped jam fit illustrated below:

Defendant's Exhibit 3 Hanger
Jam Fit

The mechanism is further illustrated by Defendant's Exhibits 10 and 10A. Plaintiff's brief is silent on the matter, and we find no similarity between the structure described in Claim 4 of the '324 patent and the J-shaped jam fit of Defendant's Exhibit 3 hanger. There is no tube-bearing flat, no offset triple bend. Rather, the Exhibit 3 hanger is similar in this respect to the familiar trouser hanger, Defendant's Exhibit 12, in which the hanger wire is jammed into the ends of a hollow cardboard crossbar. See Second Affidavit of Robert G. Schaefer, ¶ 3, attached to Robert's Reply Memorandum. Consequently, we find that the '324 patent is not infringed by the Exhibit 3 hanger.

In the absence of an enforceable contract, trade secrets and patent infringement, defendant's motion for summary judgment must be granted as to all counts of the complaint. The cause is dismissed, with each side to bear its own costs.