(No. 32132.—)

THE PEOPLE OF THE STATE OF ILLINOIS *vs.* GRACE T. DAVIDSON *et al.*, Appellees.—(LA SALLE-RANDOLPH GARAGE CORPORATION, Appellant.)

*Opinion filed January 24, 1952.*

LOUIS A. ROSENTHAL, of Chicago, (HARRY G. FINS, of counsel,) for appellant.

JOHN S. BOYLE, State's Attorney, of Chicago, (GORDON B. NASH, and EDWARD E. PLUSDRAK, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from an order of the county court of Cook County entered in a certain tax receivership proceeding denying to appellant, La Salle-Randolph Garage Corporation, the right to file a second amended petition and amendments thereto designed to secure relief under a lease entered into between appellant and the county treasurer and *ex officio* county collector of Cook County as tax receiver. Since the revenue is involved and the State is interested as a party, the appeal has been taken directly to this court.

The original receivership proceedings were commenced on February 5, 1941, when the People, through the State's Attorney of Cook County, filed a petition in the county

court for an appointment of a tax receiver under the Skarda Act. (Ill. Rev. Stat. 1951, chap. 120, par. 697.) The order appointing the receiver was entered on February 17, 1941, and the receivership has been continuous since that date.

The property involved is a parking lot located at 300-308 Orleans Street in the city of Chicago. It is approximately 46,000 square feet in area and lies on the north bank of the Chicago River in the neighborhood of the Merchandise Mart. At the time the original proceedings were commenced the owner of record of this real estate was one Grace T. Davidson who was made a party defendant to the action. Subsequently, under a trust agreement dated December 10, 1948, the La Salle National Bank of Chicago became the owner and holder of the legal title of the premises in trust for Grace T. Davidson.

On November 27, 1950, at the instance of the receiver, competitive bids were received in open court in the county court of Cook County for a one-year lease on the premises to begin December 1, 1950. Appellant became the successful bidder at $30,000 per year or $2500 per month, and on November 29, 1950, by order of the county court, the lease was approved. Appellant then entered into possession of the real estate under the lease.

On March 20, 1951, appellant filed a petition in the county court of Cook County, alleging in substance that, under the agreed rental, appellant operated the premises at a loss during the month of December, 1950, and during the months of January and February, 1951; that it is informed and believes that the premises previously rented for $500 per month; that the rental specified in the lease is "unconscionable and inequitable" and that the lease should be modified to provide for a rental of not over $800 per month. This original petition has in it no allegations or conclusions of fraud nor does it question in any way the manner in which the bidding was conducted.

While the petition was pending, and before the court had taken any action thereon, appellant filed on May 3, 1951, an amended petition which alleges the same facts as the original petition and in addition states that at the competitive bidding held on November 24, 1950, in the county court, one R. G. Lydy engaged in a lively contest of bidding with appellant; that R. G. Lydy was the real beneficial owner of the premises and a former tenant of the receiver; that R. G. Lydy had lost money in his operation of the property under a former lease with the receiver at an annual rental of $18,000; that Lydy did not disclose to appellant the fact of his ownership or that he had operated the property at a loss, and that his failure to do so constitutes a fraud upon appellant. The amended petition further alleges that the lease was never signed by the receiver and prays for a reduction of the rent and a cancellation of the lease.

On May 15, 1951, the La Salle National Bank of Chicago, owner in trust of the property involved, filed a motion to strike the amended petition on the ground that it did not state a cause of action or any basis for legal or equitable relief. After argument on the motion, the court, on May 15, 1951, entered an order sustaining the motion and striking the amended petition, but giving appellant leave to file a second amended petition within ten days provided appellant should deposit with the county treasurer within that time the sum of $5000, that being the amount in which it was delinquent in payment of rent under its lease with the receiver. The court also ordered the cause continued to May 28, 1951.

On May 28, 1951, appellant presented a second amended petition alleging in substance the same facts as previously set forth in its prior petition. The court denied leave to file, noting that appellant had not deposited the sum of $5000 with the treasurer and, on motion of the State's Attorney, appellant's motion for a rehearing on its motion

for leave to file a second amended petition was continued to June 12, 1951. On said date, the court again denied the motion and also denied leave to file an amendment to the second amended petition, which set forth the additional contention that since the lease in question could be cancelled at any time by the receiver it was void for want of mutuality. Finally, on July 3, 1951, on request of appellant, the court entered a final order denying the right to file each of the amended petitions and all amendments thereto.

Appellant points out in its brief and argument, and it is not denied by appellees, that for the purposes of this appeal all well-pleaded facts as set forth in the amended and second amended petitions are admitted. Appellant relies upon four principal contentions.

First, appellant contends that the lease is voidable because it was defrauded when the bids were taken, since R. G. Lydy, who was the real owner of the premises and a former tenant under the receiver, failed to reveal the fact of his ownership and that he had lost money operating the premises under a prior lease calling for an $18,000 annual rental. Appellant claims that Lydy "ran up" the bid to its detriment. The questions are thus raised whether, under the Skarda Act, the owner of the real estate in question may bid for the right to occupy his own premises, and whether, if he does become a bidder, he must reveal to the other bidders his identity as owner and any knowledge he may have as to the rental value of the property for their benefit.

To answer these questions properly involves an understanding of the nature of the proceedings under the Skarda Act. The proceedings are brought, not for or on behalf of the property owner, but on behalf of the People of the State of Illinois to the end that the property upon which taxes have become delinquent may be placed in the possession of a receiver and the rents collected by him and applied to the payment of past due taxes. The owner of

the property in these proceedings is an adverse party to the receiver. When the receiver acts to rent the property, he is acting, not for the benefit of the owner of the property, but for the benefit of the various taxing bodies interested in the distribution of the proceeds of the rentals obtained in receivership. It may be observed that the owner is benefited by the proceedings in the respect that he is having the delinquent taxes on his property paid, but this is merely incident to the action taken under the act and is offset by the fact that the owner is denied the right to use and occupy his own premises during the period of receivership. When, therefore, the receiver in the instant case conducted the public bidding or auction in the county court, he was not acting as agent for the owner. This was not in any sense the owner's sale or letting, and we believe that under a proper and reasonable construction of the law in question the owner had a right to bid at the auction. Certainly, there is nothing in the Skarda Act which specifically forbids the owner from becoming a tenant under the receiver and we see no objection in principle to the owner becoming a tenant provided that the rent is reasonable and adequate and the proceedings are otherwise free from fraud.

We are aware of that line of cases, (including the case of *Veazie* v. *Williams*, 8 How. 134, 12 L. ed. 1018,) cited by appellant, which condemns the practice of employing "puffers" and "by-bidders" at auction sales. Appellant's contention is, in effect, that R. G. Lydy was a "puffer" or "by-bidder" and that he ran up the bid under a scheme in which he would not be bound thereby. Such a theory or idea presupposes that the court and receiver were parties to the scheme to defraud appellant, yet the amended petition fails to allege any such conspiracy. So far as appears from the allegations in the pleadings before us, the county collector, as tax receiver and the agency by which the court administered the property, conducted the bidding in open

court where many bidders were present. Neither the court nor the receiver employed Lydy to bid nor is it alleged that there was any connection or any understanding of any kind between them. We do not see how, under these circumstances, Lydy's failure to reveal his identity as owner or his knowledge of the rental value to appellant could in any way vitiate or impair the validity of the contract between appellant and the receiver. Nor do we believe that Lydy was under any obligation to reveal the information in question to appellant. The parties were bidding adversely to one another and, certainly, at a public auction were entitled to keep to themselves any knowledge that they might have as to the value of that for which they were bidding. We do not believe appellant's petitions state any cause of action for relief on the ground of fraud.

The second contention of appellant is that the La Salle National Bank of Chicago had no legal right to file the motion to strike the amended petition. Appellees contend that, as owner of the premises, the bank had a right to intervene but appellant in reply points out that the bank's motion was filed without any leave to intervene being first had and obtained.

We do not believe that under the circumstances leave to intervene was necessary. The proceedings in question were begun in 1941 when Grace T. Davidson was the owner of the premises. In 1948, while the same receivership proceedings were still pending in the county court, the bank became the owner of the legal title in trust. The Skarda Act provides that the proceedings shall be *in rem* but that the owner shall have notice either actual or constructive and shall be a party to the proceedings. Once such action has been begun and while it is continuing, a transfer of the legal title of the real estate in question merely places the new title holder in the position of the former owner. The owner of the property may at any stage of the proceedings and while they are continuing,

file any pleading necessary or proper to protect his rights and interests. The bank as owner-trustee was, under the view we take, a party to these proceedings and by virtue of its position had the right to protect its interests by filing the motion in question without first obtaining leave to intervene.

Appellant's third contention is that the lease in question was invalid because it was not signed, because it lacked mutuality and because it was for an unconscionable rental. It is well settled that a lessee who accepts a lease ·and enters into possession under it cannot later complain that it was defectively executed by the lessor. (*Harms* v. *McCormick*, 132 Ill. 104.) It should be remembered also that the receivership proceedings are handled by the county court and that the treasurer as receiver is but an agent of the court in carrying out the proceedings. The lease in question here was specifically approved by order of the county court entered on November 29, 1950. Under these circumstances, the failure of the treasurer finally to affix his signature to the lease was immaterial.

The lease in question provides that it might be cancelled upon termination of the receivership or upon order of the court. Appellant claims that these provisions rendered the lease void for want of mutuality. The Skarda Act provides that the receiver shall be discharged when the taxes have been paid in full. This provision of the law is applicable to any leasing agreement under it and serves as a limitation upon the authority of the receiver. He has no authority to rent the real estate in question beyond the time when the taxes he has been appointed to collect have been paid. We do not believe the fact that the receiver calls attention to his limited authority in his agreement renders it void for want of mutuality. To thus hold would make it impossible for the receiver ever to rent any property under the act and the very purpose of the law would be defeated. There is no allegation in any of the pleadings

before us that appellant has in any way been disturbed in its right of possession and enjoyment of the property in question. It is true as a general proposition that where one of the parties to an agreement has the right arbitrarily to terminate the contract mutuality is lacking, but we do not believe that such a principle applies here where the provision under the law and in the lease is that the lease may be cancelled upon termination of the receivership or upon order of the court. Appellant bid for a lease in the receivership proceedings which were being conducted under the particular law in question. It could not expect to get greater rights than the statute gave it.

As to the contention that the lease provides for an unconscionable rental we can only state that the figure was arrived at in a public auction in which appellant had the right to bid or not to bid as it saw fit. Appellant seeks to support its contention that the rental specified is not equitable by showing that it is losing money in the operation of the premises, but we know of nothing in the law which says that a tenant under the receiver shall be guaranteed a profit on the operation of the real estate in question.

Finally, it is the contention of the appellant that the court erred in requiring it to deposit $5000 with the treasurer as a condition to its filing of a second amended petition. Under the view we have taken of the other matters presented by appellant, this final contention becomes a moot argument, for even though the condition had not been imposed by the court, and the second amended petition had been filed, our holding would be that it did not state a cause of action and that it would have to be dismissed. It is also true, as pointed out by appellees, that while the order of the court denying the right of appellant to file its second amended petition contains a finding that appellant has not deposited the sum of $5000 as required, it does not follow that this was the only basis for denying leave to file the second amended petition. The amended

petition had been stricken for failure to state a cause of action after full argument and the second amended petition was substantially like the first. The final order entered by the court on July 3, 1951, on motion of appellant denies and dismisses all petitions without regard to the deposit requirement and without any reference thereto.

The judgment of the county court of Cook County is affirmed.

*Judgment affirmed.*