Brunner & Lay, Inc., a Corporation; Chicago Brunner & Lay Rock Bit Corp., a Corporation; Brunner & Lay Rock Bit of Ashville, Inc., a Corporation; Birmingham Rock Bit Company, Inc., a Corporation; Brunner & Lay Rock Bit of Philadelphia, Inc., a Corporation; Brunner & Lay of Los Angeles, Inc., a Corporation; Brunner & Lay of Portland, Inc., a Corporation; Brunner & Lay (Canada) Ltd., a Corporation, Plaintiffs-Appellees, v. William E. Chapin and Chapman Engineering Supply Corp., a Division of Central Bag & Burlap Co., a Corporation.

Gen. No. 48,351.

First District, Second Division.

February 21, 1961.

Lawrence J. West and James B. Egan, for appellants.

Rappaport, Clorfene & Rappaport, of Chicago (Hamilton Clorfene, of counsel) for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

By their complaint plaintiffs seek to restrain the individual defendant, William Chapin, from engaging in the manufacture or sale of pneumatic tool accessories and similar articles, and the corporate defendant from continuing him in its employ. Defendants filed motions to strike the complaint and dismiss the suit. Based on the verified complaint and following argument of counsel, the court denied the motions to strike and dismiss the complaint, and conditioned on plaintiffs giving a surety bond in the penal sum of $10,000, directed the issuance of a temporary injunction restraining the individual defendant until April 20, 1962, from engaging either as proprietor, officer, partner, stockholder, employee or in any other capacity or manner in the manufacture, distribution or sale of pneumatic tool accessories, drilling tools, hollow drill steel, moil points, asphalt cutters, rock bits, detachable bits, small forgings, automatic machine products, including resharpening or servicing of such items and any and all items of like character sold, distributed or manufactured by the plaintiffs in any part of the United States and Canada in which the plaintiffs sell said items, and restraining the corporate defendant from employing Chapin prior to April 20,

1962, in the manufacture, distribution, sale or servicing of the mentioned products. Defendants appeal.

The complaint avers that on August 15, 1958, William Chapin and Fred J. Brunner, as president and representative of plaintiffs, entered into a contract, the preamble of which recites that Brunner, on behalf of the corporations, desires to engage Chapin as his executive assistant for sales. Plaintiffs therein agreed to employ Chapin as Assistant to the President (Sales) to assist Brunner in the supervising and administering all of the sales activities and operations of the corporations and to act as Sales Manager of the "Local Corporations." Three corporations are designated as "Local Corporations" and Chapin "will act as their Sales Manager and will direct and supervise their salesmen." The sales made by these corporations are referred to as "Local Sales." Six corporations are designated as "Outside Corporations" and Chapin "will exercise general supervision of their sales activities under the direction of Brunner." The sales of these corporations are called "Outside Sales." Chapin agrees to devote his full time, effort and attention, and all of his skill and ability in serving as Assistant to the President (Sales) in the supervising and administering of sales activities of all the outside corporations, in acting as Sales Manager of the local corporations in direct charge of the salesmen of the local corporations and their sales activities, all subject to the direction of Brunner and in the performance of such additional duties as Brunner may from time to time assign to him.. Chapin covenants and agrees as part of the consideration for the contract, without which it would not have been entered into by Brunner as corporate representative of the affiliated corporations, that he will not engage, directly or indirectly, either as proprietor, officer, partner, stockholder,

163

employee or in any other capacity or manner in the manufacture, distribution or sale of the products hereinbefore mentioned in any part of the United States and Canada in which the affiliated corporations sell the items during the term of his employment and for a period of two years from the date of the termination of his employment for any reason. The covenant shall remain in full force and effect even though the termination of Chapin's employment constitutes a breach of the agreement. The agreement may be cancelled by either party upon 30 days notice in writing.

The complaint states that the employment of Chapin terminated on March 21, 1960; that since termination of defendant's employment, in violation of the terms of the agreement, he has become engaged as a representative in charge of sales of the defendant corporation, a competitor of plaintiffs, and that he has been soliciting the business of a number of customers of plaintiffs on behalf of defendant corporation, that merchandise is being sold by the defendants to the customers of plaintiffs to the damage and prejudice of the plaintiffs, and that because of the solicitation of plaintiffs' customers for merchandise in competition with plaintiffs the latter have suffered great and irreparable damage. It will be observed that the injunction restrains the defendants until April 20, 1962, which is the relief sought in a final decree, that it embraces any part of the United States and Canada in which the plaintiffs sell their products and is not limited to customers of the plaintiffs.

Defendants maintain that the restrictive covenant in the employment contract is void per se and that it is unreasonable. Plaintiffs assert that a restrictive covenant must be judged according to its special circumstances, that the rule holding these covenants void has been relaxed and in many jurisdictions abrogated,

and that the covenant is reasonably necessary for the protection of the plaintiffs.

A search of the authorities discloses that in cases where the court has enforced a negative covenant by an employee not to work for another, the element of trade secrets or unfair dealings has been controlling and important. It has been held that an injunction against the breach of a negative covenant is, in effect, enforcing specific performance. See Northwest Side Lumber Co. v. Layton, 239 Ill. App. 82, and cases therein cited. In that case the contract was one of employment containing a covenant against the employee's competition with his employer within a certain time and radius. The court said (87):

> "Such a contract is distinguishable from one of the sale of good will in which the purchaser is entitled to protect himself against competition by the vendor within reasonable restrictions."

In the Layton case the court quoted the following from Herbert Morris, Ltd. v. Saxelby, 1 App. Cas. [1916] 688:

> " 'In all cases such as this, one has to ask one's self what are the interests of the employer that are to be protected, and against what is he entitled to have them protected. He is undoubtedly entitled to have his interest in the trade secrets protected, such as secret processes of manufacture which may be of vast value. And that protection may be secured by restraining the employee from divulging these secrets or putting them to his own use. He is also entitled not to have his old customers, by solicitation or such other means, enticed away from him. But freedom from all competition per se apart from both these things, however lucrative it might be to him, he

165

is not entitled to be protected against. He must be prepared to encounter that even at the hands of a former employee. . . . That doctrine does not mean that an employer can prevent his employee from using the skill and knowledge in his trade or profession which he has learned in the course of his employment by means of directions or instructions from the employer. That information and that additional skill he is entitled to use for the benefit of himself and the benefit of the public who gain the advantage of his having had such admirable instruction. The case in which the court interferes for the purpose of protection is where use is made, not of the skill which the man may have acquired, but of the secrets of the trade or profession which he had no right to reveal to any one else—matters which depend to some extent on good faith.' "

See also Parish v. Schwartz, 344 Ill. 563, 176 N.E. 757; Hursen v. Gavin, 162 Ill. 377, 44 N.E. 735; Union Strawboard Co. v. Bonfield, 193 Ill. 420, 61 N.E. 1,038; Frisch Corporation v. Ezzell, 25 Ill. App.2d 134, 166 N.E.2d 107.

We do not think that the cases cited by plaintiffs are applicable to the factual situation of the case at bar. In Bauer v. Sawyer, 8 Ill.2d 351, 134 N.E.2d 329, pursuant to a restrictive covenant the court restrained Dr. Sawyer from practicing medicine for a period of five years within a radius of 25 miles of Kankakee. In that case the Supreme Court did not intend to depart from the doctrine announced in previous cases, as it sets forth and relies on Hursen v. Gavin, 162 Ill. 377, 44 N.E. 735, cited by defendants in support of their contention that the restrictive covenant in the case at bar is void per se. In World Wide Pharmacal Distributing Co. v. Kolkey, 5 Ill. App.

166

2d 201, 125 N.E.2d 309, the temporary injunction restrained Kolkey from engaging in the manufacture and sale of a pharmaceutical pill containing an ingredient known as "Galega" and from advertising any pharmaceutical pill under the name of "Charm-on." Kolkey acquired intimate knowledge of the methods and procedures used in conducting plaintiff's business, including the formula used in the manufacture of the product. He secretly organized a corporation and began the distribution of "Charm-on," a product whose principal ingredient was "Galega," using identical bottles, boxes, labels and instructions used by plaintiff therein. Depriving a person of his right to work is a drastic method at best, and should only be invoked where irreparable injury is being done to the employer. Our analysis of the decisions convinces us that the chancellor erred in ordering the issuance of the temporary injunction.

Therefore the order for the temporary injunction is reversed.

Order reversed.

FRIEND, J. and BRYANT, J., concur.