Guy M. Snyder, d/b/a Inter-State Studio, Plaintiff-Appellee, v. Willard Shelby Hamilton, Defendant-Appellant.

Gen. No. 10,417.

Third District.

February 26, 1963.

Rehearing denied April 8, 1963.

 █

Garman, Greanias & Owen, of Decatur, and Robert H. Orbison, of Indianapolis, Indiana, for appellant.

Monroe & McGaughey, of Decatur, for appellee.

REYNOLDS, J.

A writ of injunction was issued by the Circuit Court of Macon County, enjoining the defendant Hamilton until January 1, 1964, from entering into or engaging directly or indirectly in the school picture business, or any branch or element thereof, in competition with the plaintiff, in certain territory in the State of Illinois. Defendant appeals.

The plaintiff owns and operates the Inter-State Studio and employs about 30 salesmen to represent him in 10 states. These salesmen make calls on principals of schools and solicit the taking of pictures of students, take the pictures, mail the undeveloped film to plaintiff's studio at Sedalia, Missouri, where the film is developed and the finished picture made. The finished pictures are then mailed back to the school principals who distribute them to the students, collect the money and remit to the studio after the school deducts its commission. This is known as the "school picture business." Defendant Hamilton was a salesman for the plaintiff, working certain territory in Illinois. The first year of employment 1953, he took 8000–9000 pictures to fulfill contracts previously made by a former employee of the plaintiff. He gradually worked up volume until in 1959 he was taking approximately 29,000 pictures a year. The first year, Hamilton was paid $75 per week plus up to $40 a week for expenses. On July 1, 1954, he signed the employment contract which is the basis of the injunction. At,

that time, he went on a percentage basis, that is, Hamilton was to receive a certain percentage of the net sales remitted to the studio from the schools he booked after July 1, 1954. In 1955, the salary arrangement was changed to a "brokerage" setup. Under that arrangement Hamilton was to receive the entire amount collected from sales of pictures and to pay all costs and special charges for processing each picture. However, Hamilton continued to draw a weekly allowance. On December 15, 1959, defendant submitted his written resignation to the plaintiff, effective December 31, 1959. On December 31, 1959, defendant had a conversation with Charles Wicker, sales manager for the plaintiff, and at that time told Wicker that he planned to go into the senior picture business, that is, the taking of individual pictures of graduating students. Snyder at that time concentrated primarily on individual student pictures and did little if any senior picture business.

Beginning January 1, 1960, defendant called on some 25 to 30 schools in his old territory. He entered into an agreement with school authorities at a Decatur, Illinois school, to take school pictures during the school year 1960–1961. He took pictures at Joppa, Illinois and sent the films to School Pictures, Inc., Jackson, Mississippi for development.

On January 22, 1960, plaintiff filed complaint for injunction basing his suit upon the employment contract entered into by him and the defendant July 1, 1954. By the terms of this agreement or contract, it was provided:

"In consideration of his employment and of the training and instructions given and to be given him, the Employee agrees that upon and after termination of his employment hereunder, for a period of four (4) years, he will not enter into or engage, directly or indirectly, or as an individual,

355

employer, partner, associate, or employee, in the school picture business or any branch or element thereof in competition with the Employer or his heirs, successors, or assigns, in the territory originally assigned to the Employee or in any other territory to which the Employee may be later assigned by the Employer and in which the Employee actually engages in the solicitation of business for the Employer. Solicitation or acceptance of school picture orders outside the restricted territory above referred to for shipment to or delivery in any such restricted territory shall be an activity included in (but in no wise restricting the meaning of) the language 'enter into or engage in the school picture business' as used above."

There is nothing in the contract assigning territory, either exclusive or otherwise, no provision as to time of employment, terms of employment or duties on the part of either party. There is a provision that either party may terminate the agreement upon notice to the other. The remuneration clause is vague, only stating that the remuneration of the employee may change from time to time, depending upon the territory assigned to the employee. Under such agreement, the employer had the right to assign such territory as he saw fit to the defendant. If the defendant did not like it, he could quit. If the employer saw fit, he could assign other men or agents to any territory the employee might be working. And, at any time the employer wanted to, he could discharge the employee, and there was no redress on the part of the defendant.

On the record, it must be conceded that the defendant was an employee of the plaintiff until December 31, 1959. The salesman, percentage, or the brokerage agreement, all amounted to an employer-employee relationship. It must also be conceded that

356

defendant, prior to the granting of the writ of injunction, was engaging in some phase of the school picture business in the same territory he had formerly worked as an employee of the plaintiff.

The school picture business can be divided into different classes. Plaintiff was engaged in the "individual student picture business." Defendant was about to enter into another phase, the "senior picture business." There is another phase that of "group pictures of classes," or "special group pictures." All would come under the general term "school pictures." The same method of approach, the procedure of solicitation and orders and method of payment would apply to all phases. From the testimony it would appear that at the time of the resignation of the defendant in December 1959, the plaintiff may have booked some "senior pictures" and "group pictures," but concentrated primarily on the "individual student pictures."

The defendant raises two points in his appeal. First, that the restrictive covenant is unilateral and void, and therefore the contract itself is void. Second, that the plaintiff had failed to prove that he would suffer irreparable injury if the injunction was not issued.

■ The general rule as pronounced by the Illinois courts is that restrictive covenants entered into by employees not to engage in a competing business with that of their employers must be reasonable as to time and area and must be reasonably necessary to protect the employer's business, and that a contract which is unlimited as to time and place is void. In this case defendant concedes that the time and the territory limitations are reasonable. But, while the defendant concedes the area and time restrictions of the employment contract are reasonable, he contends that the restrictive covenant and the entire agreement is void for the reason that it is one-sided, lacks mutuality and does not in any way bind the plaintiff; that while

357

imposing restrictions on the defendant there is nothing in the contract that imposes any obligations on the part of the plaintiff.

■■ The law in Illinois is that as a general proposition where one of the parties to an agreement has the right to arbitrarily terminate the contract, mutuality is lacking. The People v. Davidson, 411 Ill 267, 275, 103 NE2d 600. A contract is sufficient if it legally obligates both parties to abide by and perform its conditions. Prudential Ins. Co. v. Hite, 69 Ill App 416; Industrial Nat. Gas Co. v. Sunflower Nat. Gas. Co., 330 Ill App 343, 360, 71 NE2d 199. It has been held that mutuality of obligation means that both parties to an agreement are bound or neither is bound. Hall v. Gruesen, 22 Ill App2d 465, 469, 161 NE2d 345. It is sufficient that it legally obligates both parties to abide by and perform its conditions. Industrial Nat. Gas Co. v. Sunflower Nat. Gas. Co., 330 Ill App 343, 71 NE2d 199; Hall v. Gruesen, 22 Ill App2d 465, 161 NE2d 345. Where one party reserves an absolute right to cancel or terminate the contract at any time, mutuality is absent. Hodorowicz v. Szulc, 16 Ill App2d 317, 147 NE2d 887.

The case of Paul v. Rosen, 3 Ill App2d 423, 122 NE 2d 48, cited by defendant involved a sales agreement which was conditioned upon the buyer obtaining a new five-year lease from the owner. In that case there was no compulsion placed on the plaintiff to obtain the lease, and the court held that the provision relating to the obtaining of the lease did not impose mutual obligations with respect to the lease, and that the agreement was void for lack of mutuality. In the other case cited by defendant, Valdez v. Viking Athletic Ass'n, 349 Ill App 376, 110 NE2d 680, a letter from the prospective employer to the prospective employee, which did not require the employee to report for duty at any specific time, was held too in-

definite, uncertain and lacking in mutuality, and therefore unenforceable.

Both the plaintiff and defendant cite the case of Smithereen Co. v. Renfroe, 325 Ill App 229, 59 NE2d 545. In that case it was held the contract was made in consideration of the employment of the defendant by the plaintiff. In that case, as in the instant case, defendant continued in the employ of the plaintiff for approximately five years after the execution of the agreement; there as here, the plaintiff retained the defendant in its employ at a salary acceptable to the defendant and the defendant voluntarily left the employ of the plaintiff. And the court in that case, held the contract not void for want of mutuality, and at page 244, said:

"If it be regarded that the contract in the instant case is indefinite as to the terms of the employment, still it is an established principle of law that an agreement too indefinite and vague for enforcement at its inception may be made definite by performance."

■ In this case, while we regard the employment contract between the plaintiff and the defendant vague and uncertain as to any duties or obligations on the part of the plaintiff, we do not regard the restrictive covenant in said contract as void for want of mutuality insofar as individual student pictures. The defendant foreclosed his right to question that part of the contract when he entered upon his employment and worked for five years under territorial, salary adjustments and other changes imposed by plaintiff or agreed upon by both parties.

The second point raised in the appeal is that the plaintiff failed to prove irreparable injury and that the drastic remedy of injunction should be awarded

only when necessary to prevent great or irreparable injury.

It is not seriously contended that customer lists, trade secrets, or confidential information were involved in this matter. The plaintiff does state that the information as to how to function in the school picture business, how customers are sold, and the fine points of sales presentation might be trade secrets, but this view is not the view of our courts. A trade secret has been held to be a plan or process, tool, mechanism or compound known only to its owner and those of his employees to whom it is necessary to confide it. Victor Chemical Works v. Iliff, 299 Ill 532, 545, 546, 132 NE 806. There was no special skill involved in the taking of the pictures, and no special training necessary. The services rendered by the defendant were neither unique, nor extraordinary. He was a salesman engaged in calling on school principals in a certain area of Illinois to sell school pictures to the students. His territory was clearly defined. His customers were the children of the schools, ordering pictures through the school principals. It is true that working the same territory for a length of time would result in certain contacts between the defendant and the school principals he called on. There were no contractual obligations between the defendant and the school principals and at best it might be a potential advantage to him or the firm he represented only because the school principals having dealt with him in the past, might continue to give him the business.

The plaintiff contends that it is not necessary that the services of the employee be of a unique nature to justify enjoining the breach of a restrictive covenant, that such a restrictive covenant in an employment contract is valid and not against public policy if the restraint imposed upon the employee is reasonable as to time and area and reasonably necessary to protect

360

the employer's business; that such contracts or covenants are enforceable in equity by injunction and such relief is customary and proper. In support of this contention, plaintiff cites Smithereen Co. v. Renfroe, 325 Ill App 229, 59 NE2d 545; Jewel Paint & Varnish Co. v. Walters, 339 Ill App 335, 89 NE2d 835, and Jules Chain Store Corp. v. Stone, 316 Ill App 45, 43 NE2d 849. The Smithereen case involved the pest extermination business in the City of Chicago. Defendant had worked for the plaintiff as a serviceman, salesman and manager, covering a period of nine years. The parties had signed a sales contract in which Renfroe agreed that upon the termination of his employment he would not engage in the same line, or similar line of business or work for a competitor for a period of five years after termination of employment. The territory was the City of Chicago. The court in that case, holding the covenant binding, based its decision on the fact that in this particular business, the business of the plaintiff was to a large extent built upon the confidence of its customers, through long experience. That the manner and operation of plaintiff's business was peculiar in that it was necessary to use certain chemicals in combination and mixture, and that at least one of the formulae used by plaintiff was a secret process. However, the court in that case, said at page 241:

"These contracts containing restrictive covenants which impose restrictions greater than are reasonably necessary for the protection of the former employer's business, or unreasonably restrictive upon the rights of the employee or in contravention of the public interest are held invalid."

The case of Jewel Paint & Varnish Co. v. Walters, 339 Ill App 335, 89 NE2d 835, involved a restrictive covenant as to the employee for a period of two years,

361

and within twenty-five miles of any retail store of the employer.

The court in upholding an injunction, held that as manager of the store, he contacted and secured customers and that the good will which the employer's business there enjoyed, was due to the efforts of the employee. That because of the personal contact with the customers, the injunction should be upheld.

Jules Chain Store Corp. v. Stone, 316 Ill App 45, 43 NE2d 849, involved a two-year restriction within 15 miles of Moline, Illinois. This was a retail clothing store and the defendant was the manager of the Moline store. The restrictive covenant was upheld. The case of Old Rose Distilling Co. v. Feuer, 202 Ill App 210, involved the case of a restrictive covenant for 3 years and covering certain blocks near a saloon in Chicago operated by the plaintiff and managed by the defendant. The court justified the upholding of the restrictive covenant on the ground that the defendant as manager was in the position to make the patronage of the saloon largely a matter of personal following which he could probably take with him to another place in the neighborhood. In that case the defendant opened another saloon next door to that of plaintiff.

These cases present different problems and different circumstances, but generally the territory is limited and the time short. The general rule is well stated in the case of Smithereen Co. v. Renfroe, 325 Ill App 229, at page 240, 59 NE2d 545, where the court said:

> "Covenants of this character, though recognized to be in partial restraint of trade, are sustained where properly limited as to time and territory and are not otherwise against public policy, the test generally being whether the restraint is necessary for the protection of the business or goodwill thereof, the injury to the employee which must not be greater than is reasonably necessary

362

to secure the business of the employer, or the good-
will thereof. . . ."

And the court in the same case, continuing on page 241, said:

"From the above it can be seen that it is generally held that contracts of employment whereby managers, branch managers and other employees, who come into personal contact with their employer's customers, agree not to enter into competition with the business of the former employer are valid and enforceable, where such restrictive covenants are for a limited time, within a limited area and such limitations are reasonably necessary for the protection of the employer's business. These contracts containing restrictive covenants which impose restrictions greater than are reasonably necessary for the protection of the former employer's business, or unreasonably restrictive upon the rights of the employee or in contravention of the public interest are held invalid."

In the light of these cases and the law as set out by them, in deciding this case, this court must decide if the restrictive covenant involved in this case is reasonable and proper. In consideration of the matter, it is well to look at the language of the restrictive covenant itself. Hamilton agreed that upon and after termination of his employment with the plaintiff Snyder, for a period of four years, he would not enter into or engage, directly or indirectly, or as an individual, employer, partner, associate, or employee, in the school picture business *or any branch or element thereof,* in competition with the employer in the territory assigned to him. (Italics ours.) The territory included the whole of the State of Illinois, with the total exception of some twenty-six counties and exception of part of six counties, out of the one hundred two

counties in Illinois. In other words the territory covered by the defendant was approximately seventy-five counties, the major portion of which was the defendant's exclusive territory and part of which was handled by the defendant and other agents of the plaintiff. That is a big portion of the State of Illinois, which is a large and populous state. And the defendant Hamilton was not to engage in the school picture business, or any branch or element thereof, either directly or indirectly, for a period of four years.

As to this territory the defendant had no choice or selection. His territory could be and was changed by the employer without the consent of the defendant. He had a so-called exclusive territory but the plaintiff admitted in his testimony that this was not exclusive and could be changed at the whim of the plaintiff. The salary arrangement was changed from time to time.

■ While we have held that the performance of the parties under the contract cured the want of mutuality in the restrictive covenant, as to the individual student picture business, the breathing of life into a vague or indefinite agreement can only be and extend to that part of the agreement which is made definite by performance of the parties. It can go no further.

The case of Brunner & Lay, Inc. v. Chapin, 29 Ill App2d 161, 172 NE2d 652, holds that a search of the authorities discloses that in cases where the court has enforced a negative covenant by an employee not to work for another, the element of trade secrets or unfair dealings has been controlling and important. And the court in dissolving the injunction in that case, said:

> "Depriving a person of his right to work is a drastic method at best, and should only be invoked where irreparable injury is being done to the employer."

364

■ In this case we do not believe the employer has shown that he will suffer irreparable injury. The territory involved is too big, the customers too many, and the contract too one-sided for a court of equity to intervene by way of an injunction. There were no trade secrets or unfair dealings involved. It is true that there was some personal contact of the school principals by the defendant. The defendant might, because of those personal contacts be able to carry with him a few of the school principals he had called on. This is not the test. As quoted in the Brunner & Lay, Inc. v. Chapin case, 29 Ill App2d 161, at page 165, 172 NE2d 652, the employer is entitled:

> "not to have his old customers, by solicitation or such other means, enticed away from him. But freedom from all competition per se apart from both these things, however lucrative it might be to him, he is not entitled to be protected against."
> . . .

■ This court must hold (First) the restrictive covenant lacks mutuality except as to the individual student picture business, and is void as to senior picture or group pictures, and (Second) there was a failure to show irreparable injury. The complex sales and merchandising procedures of today make it imperative that our courts do not interfere with competition in business matters unless a clear right is established and a clear need for intervention is shown. We do not believe this has been done in this case.

The order granting the writ of injunction is reversed with instructions to dissolve the injunction.

Reversed and remanded with instructions.

CARROLL and ROETH, JJ., concur.