PRENTICE MEDICAL CORPORATION *et al.*, Plaintiffs-Appellants, v. SUSAN TODD, Defendant-Appellee.

First District (4th Division)  No. 85—2532

Opinion filed June 12, 1986.—Rehearing denied July 16, 1986.

Richard M. Kates, of Chicago, for appellants.

Scott Peters, of Chicago (Raymond Prosser, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiffs Prentice Medical Corporation and Albany Medical Corporation (collectively hereinafter the plaintiffs) appeal from the order of the circuit court of Cook County that denied plaintiffs' motion for a preliminary injunction pending disposition of the plaintiffs' three-count complaint against plaintiffs' former employee, Susan Todd (defendant). Plaintiffs' complaint alleged that defendant left plaintiffs' employ to establish and operate an independent medical clinic and that she solicited plaintiffs' clients to seek the services of defendant's clinic. The pleading alleged that defendant's actions violated an oral restrictive covenant in her employment agreement with plaintiffs (count I), constituted wrongful taking of plaintiffs' trade secrets (count II), and amounted to unfair trade practices (count III). In brief, the parties raise the question of whether the trial court erred in denying plaintiffs' motion for preliminary injunction.

For the reasons set forth more fully below, we affirm the order of the trial court with regard to counts I and III, reverse the order of

the trial court with respect to count II, and remand the cause for further proceedings on plaintiffs' preliminary injunction motion with regard to count II.

BACKGROUND

Plaintiffs' complaint alleged in count I that Prentice Medical Corporation owned and operated Abbey Women's Health Center (Abbey), a gynecological clinic in Arlington Heights, and Albany Medical Corporation operated Albany Women's Medical Center (Albany), a gynecological clinic on the north side of Chicago. Pursuant to an oral agreement defendant, a registered nurse, was employed by Albany in April 1981, and by Abbey in July 1982, to act under the direction of a physician in performing gynecological services directly to patients on behalf of both corporations. The oral employment agreement allegedly contained terms that the medical records of patients and information contained therein were to be treated as confidential. The alleged oral agreement provided that upon defendant's termination of her employment, she agreed that for a period of four years and within a radius of 15 miles she was forbidden to solicit the performance of gynecological nursing and medical services for any patient whom she examined, treated or advised during her employment, or to use any information about a patient to solicit patients; she was also forbidden to examine, treat or advise any patient whom she examined, treated or advised during her employment at the clinics except under emergency circumstances; and she was forbidden to set up, either alone or with others, a nursing practice involving gynecology within a 10-mile radius of Abbey or Albany for a two-years period after she terminated her employment, unless the centers no longer continued in business.

Plaintiffs further alleged that they developed their patient clientele by advertising and by reputation built up over the years; that patients with repeat business were differentiated from one-time patients; that when defendant entered into plaintiff's employ, she did not know plaintiffs' patients and developed her knowledge of them and relationship with them as an employee of plaintiffs; and that on June 30, 1985, defendant terminated her employment relationship with plaintiffs. Plaintiffs alleged that, while defendant was in their employ and in violation of defendant's employment contract, she copied the names and addresses of plaintiffs' patients, and that she sent a letter to such patients soliciting them to her for a claimed private practice of gynecological medical and nursing services at offices opened by her on July 1, 1985, within the proscribed geographical limits.

In count II, plaintiffs alleged that defendant's wrongful taking and use of plaintiffs' confidential information, *viz*, the names and addresses of plaintiffs' patients, constituted the wrongful taking of trade secrets, which threatened plaintiffs with imminent and irreparable damage.

Count III alleged that defendant's use of confidential information obtained from plaintiffs' files and defendant's holding herself out as having the ability to perform services which constituted the practice of medicine, engaged in unfair trade practices.

In their prayer for relief, plaintiffs requested that (1) defendant be enjoined from using plaintiffs' records, including the names and addresses of plaintiffs' patients, for the purpose of soliciting business away from plaintiffs or for any other purposes; (2) defendant be prevented from any solicitation to perform gynecological nursing and gynecological medical services for any patient whom she examined, treated or advised during her employment by plaintiffs, and that she be prohibited from establishing a gynecology nursing practice alone or with others except in compliance with the time periods and geographical limitations to which defendant had allegedly agreed; and (3) defendant be enjoined from holding herself out as being able to practice medicine.

Defendant was called as an adverse witness by plaintiffs. She testified that she began her employment by Albany on April 7, 1981, and by Abbey when it opened in July 1982. She denied that she had a non-competition agreement with plaintiffs. She is a registered nurse and is certified by the American College of Nurse Midwives to practice nurse midwifery. She handled the family planning program for Abbey and Albany, but did not take part in the delivery of children. She ceased seeing patients for plaintiffs on June 30, 1985, and the next day opened two facilities where she personally would see patients; she prescribed birth control pills but only under standing orders of a physician. One of the offices she opened after the termination of her employment with plaintiffs was located in Arlington Heights approximately seven miles away from Abbey and her other office was located in Chicago approximately three to four miles from Albany. She identified a letter which she mailed at the end of June 1985 to patients she had treated at plaintiffs' facilities. The undated letter, sent by defendant to plaintiffs' patients and addressed to them as "Dear Patient," contained a photograph of defendant, stated that defendant would see patients at Albany Women's Medical Center and Abbey Women's Health Center until July 1, 1985, at which time she would be moving her practice to two indicated locations and that she would "continue

to offer the same personal attention, quality medical care, and confidential services you have come to expect." The letter concluded by thanking the patients for their patience and support during this change and looking forward to seeing them again in her new facility.

Defendant further testified she had obtained the patients' names and addresses from the charts and confidential patient records of plaintiffs, and she identified a list of 3,000 patients which she began to compile in September 1984. She had recorded the names on pieces of paper and later transcribed them in two books at her home. She testified she had terminated her employment at the time of the mailing, but was not sure of the date of the mailing. She identified a list of patients she had seen at her Arlington Heights clinic, but she did not know how many were formerly patients at plaintiffs' clinics.

Jeanie Dragosz, the vice-president of Albany and manager and secretary of Abbey who hired defendant, testified that defendant was told at the time her employment began with plaintiffs that all patient information was confidential. According to Dragosz, defendant was also told and she agreed that upon termination of her employment with plaintiffs she was not to compete within two years and ten miles of Albany, and within four years and fifteen miles of Abbey, but, if the clinics were not in business, defendant would be free to do what she wanted. Dragosz testified that a patient told her that defendant told the patient that she would be leaving and moving her practice, but, when Dragosz discussed this with defendant, defendant said it was not true.

Dragosz testified that plaintiffs spent about $50,000 per year advertising, that the majority of plaintiffs' patients were repeat patients, and that some gynecology patients utilized plaintiffs' services for 20—30 years. She also explained that plaintiffs' employee manual states that a breach of patient confidentiality would be a primary reason for termination of employment. However, the employee manual did not contain any reference to restrictive covenants, even though, according to Dragosz, there was an understanding between the plaintiffs, the physicians, and defendant that the patients belonged to the clinic and remained patients of the clinic.

Dragosz further testified that defendant was the only nonphysician at plaintiffs' clinics who had the privilege to treat patients and see them for medical care, and that after defendant terminated her employment and mailed her soliciting letter to the 3,000 patients she treated at plaintiffs' clinics, that plaintiffs' patient volume was decreased.

Donna Bontempo testified that she was a patient at Albany. In

March 1985 defendant told her that she was leaving the clinic and moving her practice elsewhere, and she asked Bontempo if the latter wanted to be her patient. She also asked Bontempo not to say anything because her employer did not know. Later, Bontempo received a copy of a July 1985 letter from defendant soliciting her as a patient.

At the close of plaintiffs' case, the court allowed defendant's motion for a directed verdict and entered an order that denied plaintiffs' motion for preliminary injunction on all counts. Plaintiffs' timely appeal followed.

Opinion

■ The purpose of a preliminary injunction is to "preserve the status quo until the case can be decided on the merits. [Citations.]" (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382, 483 N.E.2d 1271.) Thus its objective "is not to determine controverted rights or to decide controverted facts or the merits of the case." (108 Ill. 2d 373, 386, 483 N.E.2d 1271.) In order to establish entitlement to preliminary injunctive relief, the moving party must show "(1) that he possesses a clearly ascertained right which needs protection, (2) that he will suffer irreparable harm without the injunction, (3) that there is no adequate remedy at law for his injury, and (4) that he is likely to be successful on the merits of his action." (*Levitt Homes, Inc. v. Old Farm Homeowners' Association* (1982), 111 Ill. App. 3d 300, 307, 444 N.E.2d 194.) Once this showing has been made, the court must then balance the equities to determine the relative inconvenience to the parties and whether the burden upon the defendant, should the injunction issue, outweighs the benefit to plaintiffs. (*In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 354, 475 N.E.2d 1077.) The granting or denial of a preliminary injunction is within the trial court's broad discretionary powers, and review of the court's order is limited to a determination of whether the court abused its discretion in the allowance or refusal of the injunction. *American National Bank & Trust Co. v. Chicago Title & Trust Co.* (1985), 134 Ill. App. 3d 772, 776-77, 481 N.E.2d 71.

The record here indicates that in its oral pronouncements, the trial court enumerated and considered the foregoing factors, and determined that plaintiffs failed to establish entitlement to preliminary injunctive relief. The court noted that injunctive relief of any kind is an extraordinary remedy. (See *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386, 483 N.E.2d 1271.) It also observed that defendant is a licensed professional, and, particularly in cases involving professionals, consideration should be given that the

restrictions sought would prevent defendant from practicing her trade or profession. (See *ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 94, 273 N.E.2d 393.) Plaintiffs dispute the trial court's determinations with respect to each count of their complaint. We consider their arguments with regard to each count separately.

I

Plaintiffs argue that the trial court erred in denying their motion for a preliminary injunction based upon count I of their complaint, on the grounds that the trial court erroneously found that plaintiffs had not established their entitlement to such relief, and that the trial court erroneously interpreted Illinois policy with respect to the enforcement of restrictive covenants in medical employment contracts.

■ Count I of plaintiffs' complaint alleged that defendant's establishment of an independent clinic in proximity to plaintiffs' clinics violated the terms of an oral restrictive covenant in defendant's employment agreement. Although plaintiffs' witness testified to the existence of an oral restrictive covenant, defendant testified that there was no such oral agreement between the parties. The trial court noted this dispute in the testimony regarding the existence of any such restrictive covenant. The court's oral pronouncements indicate that the court emphasized that the evidence produced by the plaintiffs was insufficient to warrant the issuance of preliminary injunctive relief to restrain defendant's operation of her clinic pending disposition of the merits of count I of plaintiffs' complaint. In our view the court concluded that plaintiffs' testimonial evidence was wholly inadequate to grant preliminary injunctive relief, because plaintiffs failed to demonstrate either that they possess a clearly ascertainable right in need of protective injunctive relief, or that plaintiffs were likely to succeed on the merits of count I of their complaint. Because the only evidence presented by plaintiffs amounted to the controverted testimony of one witness with respect to the existence of the oral restrictive covenant, we are unable to conclude that the trial court's denial of plaintiff's request for a preliminary injunction amounted to reversible error.

In addition, we are similarly unpersuaded that the trial court's consideration of certain policy concerns warrants reversal of the trial court's order. Plaintiffs contend that the court erroneously relied upon an alleged public policy in Illinois that there should be no undue restriction on the offering of medical assistance, and that the court's expressions regarding this public policy were contrary to sentiments expressed in *Canfield v. Spear* (1969), 44 Ill. 2d 49, 52, 254 N.E.2d 433. In upholding a restrictive covenant against a physician, the *Canfield*

court commented that the contract was not injurious to any legitimate interest of the public because the physician could be as useful to the public outside the restricted area of competition, and that the health of persons outside that area was also important; thus the public interest was not adversely affected if a physician decided to move from one community to another.

In our opinion the court's remarks were directed to the question of whether the equities between the parties favored the allowance or denial of plaintiffs' request for a preliminary injunction. Because we determine that the trial court did not err when it found that plaintiffs had not established their entitlement to such relief, we find no reversible error in the trial court's additional determination that the equities here favored the denial of plaintiffs' motion for a preliminary injunction. Accordingly, we cannot conclude that the trial court's denial of plaintiffs' motion for a preliminary injunction based upon count I of its complaint amounted to reversible error.

II

Plaintiffs claim that the trial court erred in denying their motion for a preliminary injunction with respect to count II of their complaint. This count alleged in substance that the defendant's secret taking of the names and addresses of plaintiffs' clients, and her solicitation of these individuals to seek medical services at defendant's clinic, constituted wrongful taking of plaintiffs' trade secrets.

Generally, a customer list is recognized as a trade secret "where the employer developed the information over a number of years, at great expense and kept the information under lock and key." (*American Wheel & Engineering Co. v. Dana Molded Products, Inc.* (1985), 132 Ill. App. 3d 205, 210, 476 N.E.2d 1291.) Furthermore, an employee's taking of customer lists that constitute trade secrets will be considered wrongful where the employee's actions amount to a breach of confidentiality. As the court stated in *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 358, 425 N.E.2d 1034:

> "Where a customer list or customer information constitutes a trade secret and no restrictive covenant exists, it is necessary to determine whether the employee obtained the trade secret through a breach of confidentiality. *** An employee breaches his confidential relationship with his employer where he acts in a manner inconsistent with his employer's interest during his employment in that he surreptitiously copies or memorizes trade secret information for use after his termination in the so-

licitation of his employer's customers or utilizes information in his possession to develop a product to compete with his employer's product while still in his employ."

In the case at bar, evidence was presented that prior to her termination defendant had personally solicited at least one of plaintiffs' patients (Bontempo) to become defendant's patient. Defendant admitted that the 3,000 people included in her bulk mailing solicitation were plaintiffs' patients. Plaintiffs' witness testified to a decrease in patients following defendant's termination and solicitation letter. In addition, defendant admitted copying the names and addresses in an apparently deliberate and secret manner while in plaintiffs' employ.

The evidence showed that plaintiffs developed their customer list by advertising and rendering professional service to patients over many years and at considerable cost to plaintiffs. The evidence also showed that plaintiffs treated the information as confidential, and were unaware that defendant was personally and surreptitiously compiling a list of their patients and their addresses for the purpose of a mail solicitation of plaintiffs' patients to become defendant's patients as of July 1, 1985. Moreover, defendant did solicit plaintiffs' patients after her termination. Given the language in the letter, it might even be inferred that defendant solicited patients prior to termination. In either event, plaintiffs established defendant's actual use of their confidential patient list to solicit their patients for herself.

■ Based upon these considerations, we conclude that plaintiffs established a *prima facie* protectable interest in their confidential patient list and that defendant had used these records to solicit plaintiffs' patients. Furthermore, we also find that plaintiffs made an adequate showing of irreparable injury and lack of an adequate remedy at law.

It is well settled that "prolonged interruptions in the continuity of business relationships can cause irremedial damages for which no compensation would be adequate." (*Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 243, 366 N.E.2d 603.) As the court observed in *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 137, 345 N.E.2d 795, where plaintiff sought a preliminary injunction to prevent defendants from contacting any persons on its list of 1,000 "preferred" customers:

"An employer is entitled not to have his old customers enticed away from him under Illinois law. (*Snyder v. Hamilton* (1963), 39 Ill. App. 2d 352, 365, 189 N.E.2d 97.) If defendants are permitted to solicit [plaintiffs's] preferred customers, plaintiff's relationship with its most valuable customers may be impaired

with the consequence that plaintiff may lose business. We think that irreparable injury was established by plaintiff's evidence and nothing more.

Defendants argue that irreparable injury has not been shown because plaintiff failed to prove any aggressive solicitation of its preferred customers, or any customer defection and monetary loss. However, this contention ignores the fact that preliminary injunctive relief is fashioned to prevent the danger of future loss. The evidence here showed that approximately 20 percent of [plaintiff's] preferred customers appears on [defendant's] 'prime list' which was prepared by [defendant] for solicitation purposes. There is no requirement that a court must wait until an injury occurs before granting relief."

See also *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 294, 389 N.E.2d 1300.

In the instant case, plaintiffs' evidence established a protectable interest in their confidential patient list and sought to enjoin defendant from further use of the records of plaintiffs' patients. Irreparable injury does not mean that the harm is beyond the possibility of repair or beyond compensation in damages; nor does it mean that the injury must be great. The concept of irreparable injury, however, denotes transgressions of a continuing nature such as constant breach of a contract resulting in damage to the good will of a business which would be incalculable (*Sports Unlimited, Inc. v. Scotch & Sirloin of Woodfield, Inc.* (1978), 58 Ill. App. 3d 579, 583, 374 N.E.2d 916) or loss of competitive position, a species of very real but intangible harm not readily subject to measurement by any certain pecuniary standard (*Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 286, 422 N.E.2d 953). It is reasonable to infer that plaintiffs may suffer a consequent loss of good will and damage to their competitive position and that defendant's actions will be of a continuing nature. As a result plaintiffs sufficiently established a threat of irreparable harm. As the analysis set forth above indicates, injunctive relief has been held proper in cases involving wrongful appropriation of customer lists. Based upon the evidence presented, we conclude that plaintiffs have shown *prima facie* entitlement to a preliminary injunction on count II, pending further hearings. As a result, we conclude that the trial court erred in granting defendant's motion for a directed verdict with respect to that count of the plaintiffs' complaint.

### III

Finally, regarding count III, plaintiffs contend that, apart

from any statutory authority, courts have the power to enjoin unfair trade practices and unfair competition likely to extend into the future. (*Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc.* (1958), 15 Ill. 2d 182, 194, 154 N.E.2d 290.) Plaintiffs maintain that defendant should be enjoined from competing through the unfair trade practice of holding herself out as practicing medicine.

In our opinion, plaintiffs' evidence that defendant, a registered nurse, was holding herself out as practicing medicine on her own, was not sufficient to show plaintiffs' likelihood of success on the merits of this claim. Although defendant did refer to her "practice" in her letter, we cannot agree that the letter alone, considered with the evidence at trial, established that defendant was holding herself out to plaintiffs' patients as practicing medicine when she was not a licensed physician. The only relevant evidence in this regard in the record suggests that defendant was operating under standing orders, in cooperation with supervising physicians, in a manner similar, if not identical, to her practice when employed by plaintiffs. Therefore, plaintiffs did not establish a *prima facie* right to injunctive relief under count III, and the court did not commit reversible error in refusing the requested relief under count III.

For the foregoing reasons, the order of the circuit court of Cook County denying the issuance of a preliminary injunction is affirmed with respect to counts I and III, the order of the circuit court of Cook County denying the issuance of a preliminary injunction is reversed with respect to count II, and the cause is remanded for further proceedings on plaintiffs' preliminary injunction motion in count II of plaintiff's complaint.

Affirmed in part, reversed in part, and remanded.

LINN, P.J., and JOHNSON, J., concur.